BRIAN A. VOGEL (No. 167413)
LAW OFFICES OF BRIAN A. VOGEL, PC
770 County Square Drive, Suite 104
Ventura, CA 93003
Telephone: (805) 654-0400
Facsimile: (805) 654-0326
E-Mail: brian@bvogel.com

Attorneys for Plaintiff Charles Holmes

# UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES HOLMES, (AL-0671), an individual, | 3:16-cv-02458-MMA-BLM |
| Plaintiff, | ***FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF*** |
| vs. | 1. 42 U.S.C. 1983 |
| DR. ESTOCK, in her official and individual capacities; DR. BAL, in her official and individual capacities; S. CHAIKEN, PHD, in her individual and official capacities; C. REGULES, in his individual and official capacities; J. CLARK KELSO, an Official, as Receiver of the California Corrections Health Care Services Unit, in his official capacity; SCOTT KERNAN, an Official, as Secretary of the California Department of Corrections and Rehabilitation, in his official capacity; EDMUND G. BROWN, an Official, as Governor of the State of California, in his official capacity; WARREN L. MONTGOMERY, an Official, as Warden of Calipatria State | |

1

Prison, in his official capacity;                )
MUHAMMAD NASIR, an Official, as                  )
Health Care CEO of Calipatria State              )
Prison, in his official capacity; DR.            )
THERESA CURRIER, an Official, as                 )
custodial primary care physician for             )
Plaintiff, in her individual capacity, and       )
DOES 1-10, inclusive,                            )
                                                 )
                        Defendants.              )
                                                 )
                                                 )
                                                 )
_____         )

## I. INTRODUCTION

1.      This is a civil action for compensatory damages and injunctive relief arising out of Defendants' deliberate indifference to Plaintiff's serious medical needs in violation of his Eighth Amendment right to be free from cruel and unusual punishment.  Plaintiff seeks redress for deprivation of his rights, privileges and immunities, secured by the Eighth Amendments to the United States Constitution.

2.      Plaintiff is an inmate serving a life sentence under the care, custody and control of the California Department of Corrections and Rehabilitation ("CDCR").  He is currently housed at Calipatria State Prison ("CSP-CAL") in Imperial County, California.  During the time period relevant to the complaint, he was also housed at the California State Prison-Sacramento ("CSP-SAC") in Sacramento County, California.

3.      Plaintiff came into the custody of the CDCR in 2012 with a congenital defect in his left kidney requiring medical treatment.  From 2012 until July 2014, Plaintiff  was treated by two qualified and diligent urologists, Dr. Fawcett and Dr.

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

David Hadley.  Both recommended further surgical intervention at UCSD to treat his kidney which was not draining properly either due to an obstruction ("stricture"), or because his ureter, (the valve connecting the kidney to the bladder), was enlarged and allowed urine from the bladder to flow backwards into the kidney, or both.  Prior to his transfer to CSP-SAC in July 2014, Plaintiff's nephrostomy tube was removed after Plaintiff developed an infection.  Contrary to the advice of his urologist, Dr. Hadley, the tube was never replaced.

4.       For the past four years, Plaintiff's kidney and ureter, have not been draining urine normally resulting in swelling, (hydronephrosis) and chronic urinary tract infections.  Plaintiff contends that Defendants' failure to surgically repair or remove his chronically infected left kidney has caused him to needlessly suffer severe pain and emotional distress for years and will inevitably result in renal failure in one or both of his kidneys.

## II. JURISDICTION AND VENUE

5.       Subject matter jurisdiction for this action is conferred upon this Court pursuant to 28 U.S.C. §§1331 and 1343, as it arises under 42 U.S.C. §1983.

6.       Venue is properly in this Court, pursuant to Title 28 U.S.C § 1391, as this judicial district is the residence of one or more of the Defendants, all of the Defendants are believed to be residents of the State of California, all of the acts and omissions complained of occurred in California, and Plaintiff is currently incarcerated in this district.

## III. PARTIES

**A.  ORIGINAL DEFENDANTS**

7.       Defendant E. ESTOCK M.D. ("ESTOCK") resides in Imperial County, and is employed as a DOCTOR AT CSP-CAL.  At all times relevant to this complaint, the defendant was a doctor employed at CSP-CAL and was Plaintiff's primary care

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

physician at CSP-CAL prior to his transfer to CSP-SAC on July 15, 2014.  She is sued in her individual and official capacities.

8.      Defendant K. Ball, D.O. ("BALL"), (erroneously served and sued as Dr. Bal), resides in Imperial County and is employed as a Doctor/Chief Medical Officer.  During the relevant time of the complaint the defendant was a doctor employed at the CSP-CAL.  Dr. Ball denied Holmes' 602 inmate healthcare grievance (attached hereto as Ex. 1) on August 5, 2014.  Dr. Ball is sued in her individual and official capacities.

9.      Defendant S. CHAIKEN, Ph.D ("CHAIKEN") resides in Sacramento County and was employed as the CEO (Chief Executive Officer) at CSP-SAC from the year 2014 through 2015.  She is sued in her individual and official capacities.

10.     Defendant C. REGULES ("REGULES") resides in Sacramento County and was employed as a Chief Support Executive at CSP-SAC during the years 2015 and 2016.  He is sued in his individual and official capacities.

**B. ADDITIONAL DEFENDANTS ADDED IN FIRST AMENDED COMPLAINT**

11.     Defendant J. Clark Kelso ("KELSO") is the current head, as Receiver, of the California Corrections Health Care Services Unit ("CCHCS").  He is responsible for CCHCS which is an agency of the State of California that has been responsible for the health care of the State of California's prison system since October 3, 2005, after the decision in *Plata v. Brown*, Case No. 01-1351 [Northern District of California] held that the inadequate provision of health care in California prisons violated the Eighth Amendment.  On February 14, 2006, the Court in *Plata* specifically ordered that "the Receiver shall exercise all powers vested by law in the Secretary of the CDCR as they relate to the administration, control, management, operation, and financing of the California prison medical health care

4

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

system." *Plata v. Brown*, *supra,* ECF no. 473.  As the Receiver appointed to oversee the administration, control, management, operation and financing of the CCHCS, Defendant KELSO has the authority to comply with any order made by this court authorizing injunctive relief to remedy Plaintiff's condition.  Defendant KELSO is liable for maintaining policies, customs, and practices which were the moving force of the constitutional deprivations Plaintiff has suffered.

12.     Defendant Scott Kernan ("KERNAN") is the current Secretary of the California Department of Corrections and Rehabilitation (CDCR). He assumed that position as of December 2015.  CDCR is the agency that administers all of California's prisons and is responsible for all inmates in its custody.  CDCR has approximately 170,000 prisoners under its authority and has a budget of $9 billion, making it the State's largest agency.  KERNAN is responsible for the policies and practices of the organization.  In setting and maintaining those policies and practices, KERNAN personally acted to deprive Plaintiff of his rights and failed to act to protect Plaintiff from the constitutional injuries detailed herein.  As the Secretary of CDCR, Defendant KERNAN, in conjunction with the powers vested in Defendant KELSO as the Receiver appointed to oversee the administration, control, management, operation and financing of the CCHCS, has the authority to comply with any order made by this court authorizing injunctive relief to remedy Plaintiff's condition. Defendant KERNAN is liable for maintaining policies, customs, and practices which were the moving force of the constitutional deprivations Plaintiff has suffered.

13.     Defendant Edmund G. Brown ("Governor BROWN") is the current Governor of the State of California, having succeeded Former Governor Arnold Schwarzenegger in January, 2011.  Governor BROWN had the authority and the means to establish or to discontinue correctional authority policies and practices, including the policies that resulted in the failure to provide adequate medical care

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

to Plaintiff.  As the Governor of the State of California, Defendant BROWN, in conjunction with the powers vested in Defendant KELSO as the Receiver appointed to oversee the administration, control, management, operation and financing of the CCHCS, has the authority to comply with any order made by this court authorizing injunctive relief to remedy Plaintiff's condition. Defendant BROWN is liable for maintaining policies, customs, and practices which were the moving force of the constitutional deprivations Plaintiff has suffered.

14.    Defendant Warren L. Montgomery ("MONTGOMERY") is the warden at CSP-CAL.  As the warden at CSP-CAL, Defendant MONTGOMERY, in conjunction with the powers vested in Defendant KELSO as the Receiver appointed to oversee the administration, control, management, operation and financing of the CCHCS, has the authority to comply with any order made by this court authorizing injunctive relief to remedy Plaintiff's condition.  Defendant MONTGOMERY is liable for maintaining policies, customs, and practices which were the moving force of the constitutional deprivations Plaintiff has suffered. Defendant MONTGOMERY was aware that a substantial risk of serious harm has existed to Plaintiff and the substantial risk has been obvious.

15.    Defendant Muhammad Nasir ("NASIR") is the current Health Care CEO at CSP-CAL.  As the Health Care CEO at CSP-CAL, Defendant NASIR, in conjunction with the powers vested in Defendant KELSO as the Receiver appointed to oversee the administration, control, management, operation and financing of the CCHCS, has the authority to comply with any order made by this court authorizing injunctive relief to remedy Plaintiff's condition.  Defendant NASIR is liable for maintaining policies, customs, and practices which were the moving force of the constitutional deprivations Plaintiff has suffered.

16.    Defendant Dr. Theresa Currier ("CURRIER") is Plaintiff's current primary care physician ("PCP") at CSP-CAL.  As the Plaintiff's PCP, Defendant

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

CURRIER, in conjunction with the powers vested in Defendant KELSO as the Receiver appointed to oversee the administration, control, management, operation and financing of the CCHCS, has the authority to comply with any order made by this court authorizing injunctive relief to remedy Plaintiff's condition. Defendant CURRIER is liable for maintaining policies, customs, and practices which were the moving force of the constitutional deprivations Plaintiff has suffered.  Defendant CURRIER was aware that a substantial risk of serious harm has existed to Plaintiff and the substantial risk has been obvious.

17.    Defendants DOES 1-10 reside in either Imperial or Sacramento County and are employed by CDCR or CCHS. These DOE defendants during all times relevant to the complaint were responsible for making the decisions concerning Plaintiff's treatment or non treatment.  Each DOE defendant is sued in his/her individual and official capacities.

18.    The true names and capacities, whether individual, corporate, associate, governmental or otherwise of DOE Defendants herein are presently unknown to Plaintiff. Plaintiff will seek leave of the Court to amend this Complaint to show the true names and capacities of such Defendants if and when these are ascertained by Plaintiff.

19.    Plaintiff is informed and believes, and thereon alleges, that each and every act or event was done, caused, suffered, allowed, or committed by Defendants, or by any of them, or was done, caused, suffered, allowed, and permitted by each and every Defendant, within the scope and course of his or her duties as the agent, principal, or partner, of each and every other Defendant.

### IV. FACTUAL ALLEGATIONS

20.    Plaintiff is currently housed at Calipatria State Prison.  His medical records reveal that when he was approximately 11 years old, he was diagnosed with narrowing of the left ureter and underwent reconstructive bladder surgery.

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

21.     After his incarceration in 2010, Plaintiff went to USC for a surgical procedure on his left kidney.  The surgery proved to be unsuccessful.

22.     In February 2012, after becoming incarcerated in California State Prison, Holmes began to experience flank pain and recurrent urinary tract infections. He was referred for consultation and treatment to two urology specialists.

23.     Mr. Holmes was first taken to an outside urologist, Dr. Fawcett, at Alvarado Hospital.  Dr. Fawcett had to replace a surgical stent in his kidney which had become infected.  Surgical stents are often used to dilate the kidney at the point of the obstruction to widen the area of obstruction or "stricture" and allow proper drainage to resume into the bladder. Surgical stents often become encrusted after about four months and they have to be monitored and surgically exchanged at regular intervals to avoid recurrence of obstructions at the site of the stent.

24.     Alternatively, or in conjunction with a stent, a nephrostomy tube can be inserted onto the kidney above the obstruction to allow urine to drain directly from the kidney, through the tube, and then out of the body.

25.     On 06/18/2013 Dr. Fawcett recommended that Holmes not repeat a stent as was previously done, but rather, that he receive an "auto transplant."  An "auto transplant" is a procedure which repositions the kidney inside the body in a way that restores proper pressure and allows urine in the kidney to drain properly into the bladder. Dr. Fawcett noted that his office was not equipped to perform such an operation and recommended "tertiary consultation for possible surgery." Holmes was then referred to the tertiary facility, Loma Linda University Hospital for further evaluation.

26.     On October 21, 2013, Dr. David Allen Hadley, a urologist from Loma Linda University, observed that Holmes had "a left ureteral stricture status post two repairs in the past with recent failure from 2011 at USC." Dr. Hadley recommended "a left percutaneous nephrostomy be performed followed by

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

removal of the indwelling ureteral stent. Following this, imaging is to be performed to determine the exact location and length of the stricture and determine what further surgical intervention is indicated."

27.     On 10/31/2013, Dr. Hadley placed a nephrostomy tube in the left kidney. The purpose of this was to drain the kidney and bypass the obstruction in the ureter between the bladder and the kidney. It was also noted that the patient had "a mega ureter," that is, a dilated ureter from the point of the bladder to the area of the stricture above.

28.     In Holmes' case, Dr. Hadley ordered the nephrostomy tube to be placed until the patient could be further evaluated to decide what definitive surgery was necessary to correct the obstruction. In March 2014, Dr. Hadley was prepared to proceed with the surgery. After Dr. Hadley removed the nephrostomy tube, he was not certain of the exact location of the stricture nor its extent and he requested a second opinion at UCSD before proceeding with the surgery. When subsequent testing revealed that the kidney was still obstructed, Dr. Hadley replaced the nephrostomy tube.

29.     That same day, in the aftercare instructions given to Holmes, the interdisciplinary progress notes of 5/9/14, detail Primary Care Provider, Dr. Estock's conversation with Plaintiff. She explained the damage that he would do to the kidney if he removed the nephrostomy tube including, but not limited to, infection, loss of kidney function or kidney itself and/or death.

30.     Dr. Hadley gave specific instructions on both 5/27 /14 and again on 6/04/14 that the nephrostomy tube was not to be removed until a second opinion was obtained with regard to a definitive surgical procedure to treat the kidney.

In July of 2014, the area around Plaintiff's nephrostomy tube became infected. The nephrostomy tube allowed the obstructed or partially obstructed kidney to function and drain properly. Failure to maintain appropriate drainage with either a

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

nephrostomy tube, ureteral stent or both could lead to chronic infection arising from the undrained urine and waste stored in the kidney.

31.     In spite of Dr. Hadley's recommendation that the tube was to stay in place until another urologic opinion with regard to definitive care was done, the tube was nonetheless removed on 07/14/2014 and Plaintiff was then transferred to CSP-SAC the next day.

32.     Rather than following the advice of Dr. Hadley and Dr. Fawcett, to arrange for a medical transfer to allow a surgical consult at UCSD, Defendant Estock allowed Plaintiff to be transferred to CSP-SAC.

33.     After he arrived at CSP-SAC, he was not seen by the PCP doctor for 14 days. By this time he had developed a predictable kidney infection. He was not seen by an outside urologist expert for another two months after his transport to Folsom Prison despite the fact that the nephrostomy tube had still not been replaced.

34.     Eventually on 09/17 /2014, again on 10/08/2014, Holmes, was taken to outside urologist at the UC San Francisco Hospital (UCSF), Dr. Marshall Stoller, for his opinion on the treatment of Holmes condition. At this initial consult, UCSF concurred with Dr, Fawcett that "patient may need future auto transplant."

35.     However, at a second consult three weeks later, UCSF suggested double voiding as treatment in lieu of a long-term surgical remedy. This proved to be ineffective and is reflected in PCP provider notes on 11/19/2014. PCP provider Dr. James Wedell writes, "patient has complied with UCSF urology treatment recommendations. Zero help. No response to UCSF treatment suggestion and strongly recommend transfer to California State Prison near UCSD! ASAP!"

36.     Plaintiff has had recurring urinary tract infections ever since with only temporary relief from recommended antibiotics and self-catheterization. This

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

treatment was not effective and the antibiotics have become less effective and produced multiple antibiotic resistant organisms.

37.    After all nonsurgical treatments recommended by Dr. Stoller at UCSF had failed, Plaintiff requested that he get another urology specialist opinion. His plea was denied. He repeatedly asked for a replacement of his nephrostomy tube and/or further corrective surgery.  Despite severe and chronic infection and pain, Holmes was informed that he was already advised by the doctors at Folsom Prison and health care providers at CCHCS and this was not deemed medically necessary.

38.    Holmes was transferred back to CSP-CAL in July of 2016.  Since then, he has been treated for his kidney condition by another Dr. Dean Hadley who turns out to be Dr. David Hadley's uncle.  Plaintiff's painful urinary tract infections have continued and he has not received a new nephrostomy tube, stent, or any other surgical intervention. Over the past two years, he has begun to experience pain in his right kidney which is not unusual when the left kidney is swollen and chronically infected.  Unless Plaintiff's diseased left kidney is surgically repaired for removed, he remains at grave risk for renal failure.

## V. EXHAUSTION OF ADMINISTRATIVE REMEDIES

39.    Plaintiff has exhausted all available and necessary administrative remedies as required by 42 U.S.C. § 1997(e) and *Booth v. Churner*, 532 U.S. 731 (2001). Plaintiffs' administrative complaints were sufficient to put prison authorities on notice of the nature of wrong for which redress was sought.

40.    On July 1, 2014, Plaintiff submitted a Patient-Inmate Health Care Appeal, Form No. CDCR 602 HC ("602").  He stated that he had "bad" pain in both of his kidneys and that his urine was cloudy.  He believed that he had a kidney infection and requested that blood work be done.  He notes that on June 4, 2014, he was seen by Dr. Hadley at Loma Linda Hospital who recommended a second opinion at UCSD.  He writes that a transfer to CSP-SAC would "cause substantial harm to my

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

health, and [he would have to] start over again with a new medical staff when [he is] in need of urgent medical attention."

41.   Plaintiff was then transferred to CSP-SAC on July 15, 2014.  The appeal was assigned to Dr. Estock who interviewed Plaintiff by phone on July 24, 2014.  As Dr. Estock was well aware, both Dr. Hadley and Dr. Fawcett at Loma Linda, who had performed surgical procedures on Mr. Holmes' left kidney which proved to be unsuccessful in remedying his vesicoureteral reflux, the possible stricture in his left kidney and the stage 4 hydronephrosis in his left kidney, had recommended that Plaintiff be referred to UCSD for additional surgical repair of his left kidney.  The appeal was denied on August 5, 2014 by Defendant Dr. Ball.  Plaintiff was notified on August 6, 2014.

42.   Plaintiff appealed the denial to California Correctional Health Care Services (CCHCS).  On November 25, 2014, J. Lewis, the Deputy Director of Policy and Risk Management Services for CCHCS, denied the appeal and noted "this decision exhausts your administrative remedies."

43.   On January 16, 2015, Plaintiff submitted a second Patient-Inmate Health Care Appeal, while still housed at CSP-SAC.  He stated that his urine was backing up to his kidney from his bladder and he was in "very bad pain."   He requested to be seen by a specialist in urology.  The appeal was assigned to Dr. J. Ma.  Plaintiff was interviewed on March 20 2015.  The appeal was denied and Plaintiff was informed on April 1, 2015.

44.   Plaintiff appealed the denial to CCHCS.  On October 26, 2015, J. Lewis denied the appeal and stated "this decision exhausts your administrative remedies."
///

///

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

## VI. DEFENDANTS' ABILITY TO COMPLY WITH AN ORDER COMPELLING INJUNCTIVE RELIEF

45.     CDCR has an established, robust, formal set of regulations and procedures for the transfer of inmates between correctional facilities, pursuant to Title 15, § 3379 of the California Code of Regulations.

46.     CDCR "routinely transfers hundreds or thousands of inmates on a weekly basis" using these regulations and established procedures.

47.     Defendants' procedures include provisions for voluntary and involuntary transfers.

48. Inmates can be transferred not only to other CDCR correctional facilities, but can also be transferred to out-of-state correctional facilities, or to federal facilities in California, under established CDCR transfer procedures. Title 15, § 3379(a)(6) and (a)(7).

49. The transfer procedure allows for temporary placement of inmates in facilities or levels for which they are not endorsed, due to medical conditions, and includes provisions for resolving any pending disciplinary issues prior to transfer. Title 15, § 3379(b) and (c).

50. These provisions, in conjunction with the official powers vested by California law in Defendants KELSO, KERNAN, BROWN, MONTGOMERY, NASIR, BROWN and CURRIER empower these defendants to comply with any order for injunctive relief which this deems appropriate.

**V.**

**FIRST CLAIM FOR RELIEF**

**VIOLATION OF THE EIGHTH AMENDMENT**

**(42 U.S.C. 1983)**

51.     Plaintiff incorporates by reference each and every allegation contained in the foregoing paragraphs, as though set forth herein verbatim.

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

52.     Plaintiff maintains that the deprivations and violations of his constitutional rights were carried out pursuant to the rules, regulations, customs, policies, and practices of defendants in their official capacities, and that the named governmental defendants, acting under color of state law, caused plaintiff to be deprived of his constitutional rights.

53.     Plaintiff has an Eighth Amendment federally-protected right to be free from cruel and unusual punishment, a right secured by the United States Constitution, under 42 U.S.C. § 1983.

54.     Defendants acted under color of state law in that Defendants are state employees, operate the state prisons, and carry out the policies and practices described herein under the authority of California statute, regulation, and policy, to control Plaintiff's life, prison housing location, housing conditions, and medical care.

55.     The Eighth Amendment prohibits inhumane methods of punishment and inhumane conditions of confinement.

56.     When the State takes a person into its custody and holds him against his will, the Constitution imposes upon it a corresponding duty to assume a responsibility for his safety and general well-being. When the State fails to provide for the needs of a confined individual, including medical care and reasonable safety, it transgresses the substantive limits on state action set by the Eighth Amendment.

57.     An Eighth Amendment violation is stated when officials can be shown to have known of and disregarded a substantial risk of serious harm to prisoners.

58.     Defendants ESTOCK, BALL, CHAIKEN and REGULES were personally involved in the grievance process in which plaintiff specifically requested additional care and treatment for his kidney problem.  Each of these defendants was aware of the problem yet acted in deliberate indifference to Plaintiff's serious

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

medical needs when they denied his grievances and appeals and failed to take action to remedy his condition.

## VI.   PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief as follows:

A. For the issuance of an injunction compelling Defendants to comply with the Eighth Amendment and provide Plaintiff with appropriate medical care for his kidney problem.

B. For general, special and compensatory damages to be determined according to proof;

C. For an award of Plaintiffs' costs and attorneys' fees under 42 U.S.C. §1988, and,

D. For such other and further relief as the Court may deem just and proper.

Dated: March 16, 2018          LAW OFFICES OF BRIAN A. VOGEL, PC

By: _____/s/_____
BRIAN A. VOGEL
Attorney for Plaintiff, , CHARLES
HOLMES (AL-0671)

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial.

Dated: March 16, 2018          LAW OFFICES OF BRIAN A. VOGEL, PC

By: _____/s/_____
BRIAN A. VOGEL
Attorney for Plaintiff, CHARLES
HOLMES (AL-0671)

15

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

# EXHIBIT 1

STATE OF CALIFORNIA                                          DEPARTMENT OF CORRECTIONS AND REHABILITATION
**PATIENT-INMATE HEALTH CARE APPEAL**
CDCR 602 HC (REV. 6/13)          *CAL HC   14033383*                          Page 1 of 2

| STAFF USE ONLY Emergency Appeal | ☐ Yes  ☑ No | Institution: *CAL SC* | Log #: *14000226* | Category: *8* |
|---|---|---|---|---|
| Signature: *M. Singh sew* | Date: *8/15/14* | | FOR STAFF USE ONLY | |

You may appeal any medical, mental health, or dental decision, action, condition, omission, policy or regulation that has a material adverse effect upon your welfare. See California Code of Regulations, Title 15, Section (CCR) 3084.1. You must send this appeal and any supporting documents to the Health Care Appeals Coordinator (HCAC) within 30 calendar days of the event that led to the filing of this appeal. If additional space is needed, only one CDCR Form 602-A will be accepted. Refer to CCR 3084 for further guidance with the appeal process. No reprisals will be taken for using the appeal process.

Appeal is subject to rejection if one row of text per line is exceeded.          **WRITE, PRINT, or TYPE CLEARLY.**

| Name (Last, First): *HOLMES Charles* | CDCR Number: *AL0671* | Unit/Cell Number: *INF. 9* | Assignment: |
|---|---|---|---|

State briefly the subject/purpose of your appeal (Example: Medication, To See Specialist, etc.):
*Denial, delay of access to treatment*

**SECTION A.** Explain your issue (If you need more space, use Section A of the CDCR 602-A): *ON 6-28-14 I INFORM THE NURSE's THAT BOTH MY KIDNEY'S ARE IN BAD PAIN, she checked MY URINE I Had a INFECTION, ON 6-29-14 I was still having pain in BOTH MY KIDNEY and CHEST PAIN, I asked BOTH NURSE could THEY INFORM DR. ESTOCK TO Have Blood done, To see if I Have a INFECTION IN*

**SECTION B.** Action requested (If you need more space, use Section B of the CDCR 602-A): *I be seen by a doctor OR sent to a HOSPITAL TO CHECK MY KIDNEY FUNCTION. medical staff follow DR. Hadley RECOMMENDED 2ND OPINION at JCSD HOSPITAL.*

☐ **Supporting Documents:** Refer to CCR 3084.3.
List supporting documents attached (e.g., Trust Account Statement; CDCR 7410, Comprehensive Accommodation Chrono; CDCR 7362, Request for Health Care Services; etc.):

☑ **No, I have not attached any supporting documents. Reason:** *Waiting for a Copy of My Medical Records / From LOMA LINDA.*

Patient-Inmate Signature: *Charles Holmes*          Date Submitted: *7.1.14*
☐ **By placing my initials in this box, I waive my right to receive an interview.**

| SECTION C. FIRST LEVEL - Staff Use Only | Check One: Is CDCR 602-A attached? ☑ Yes ☐ No |
|---|---|
| This appeal has been: | Check One: Is this a recategorized/converted 1824? ☐ Yes ☑ No |

☐ Bypassed at the First Level of Review. Go to Section E.
☐ Rejected (See attached letter for instruction):  Date: _____ Date: _____ Date: _____ Date: _____
☐ Cancelled (See attached letter).  Date: _____
☑ Accepted   Assigned to: *Estock*          Title: *MD*   Date Assigned: *7/14/14* Due Date: _____

First Level Responder: Complete a First Level response. Include Interviewer's name, title, interview date, location, and complete the section below.
Date of Interview: *7/24/14 @ 1538-1559* Interview Location: *by phone - assisted by Sgt Prabhakar at SAC x*

Your appeal issue is: ☐ Granted ☐ Granted in part ☑ Denied ☐ Other: _____
See attached letter. If dissatisfied with First Level response, complete Section D.

| 1. Disability Code: | 2. Accommodation: | 3. Effective Communication: | Interview conducted? ☑ Yes ☐ No | *916 985 8610 x 6589* |
|---|---|---|---|---|
| ☐ TABE score ≤ 4.0 ☐ DPH ☐ DPV ☐ LD ☐ DPS ☐ DNH ☐ DNS ☐ DDP ☐ Not Applicable | ☐ Additional time ☐ Equipment ☐ SLI ☐ Louder ☐ Slower ☐ Basic ☐ Transcribe ☐ Other* | ☐ P/I asked questions ☐ P/I summed information Please check one: ☐ Not reached* ☐ Reached *See chrono/notes | Interviewer: *Dr Emol* Signature: Reviewer: *Bam* Signature: | Title: *PhS* Date completed: *8/x/14* Title: *CM* **DR. BALL CME CAL** |
| 4.Comments: | | | | |

| HCAC Use Only Date received by HCAC: _____ | HCAC Use Only Date closed/mailed/delivered to appellant: *9/6/14* |
|---|---|

RECEIVED
I CAB
OCT 0 8 2014
HC APPEALS

COMPLETED
I CAB
NOV 2 5 2014
HC APPEALS

Ø+5b

RECEIVED
JUL 03 2014

CAL
HC Appeals

STATE OF CALIFORNIA
INMATE/PAROLEE APPEAL FORM ATTACHMENT
CDCR 602-A (08/09)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

Side 1

| IAB USE ONLY | Institution/Parole Region: | Log #: | Category: |
|---|---|---|---|
| | CAL HC | 14033383 | 8 |
| | FOR STAFF USE ONLY | | |

Attach this form to the CDCR 602, only if more space is needed. Only one CDCR 602-A may be used.
Appeal is subject to rejection if one row of text per line is exceeded.                    WRITE, PRINT, or TYPE CLEARLY in black or blue ink.

| Name (Last, First): | CDC Number: | Unit/Cell Number: | Assignment: |
|---|---|---|---|
| HOLMES CHARLES | AL0671 | FNF-9 | |

**A. Continuation of CDCR 602, Section A only (Explain your issue):** in MY Blood, AND To
CHECK MY KIDNEY FUNCTION. I was told Dr. Stock said she is
not seeing me and the only medical treatment I'm
Getting is being transfer to a NEW PRISON. I have
NOT BEEN SEEN by Dr. Stock in 6 WEEKS, I have asked
that MY NEPHlostomy tube dressing be changed at least
ONE TIME a week, but Dr. Stock wouldn't write a order,
So my dressing go's weeks without being cleaned
and changed. I have been in MY bed PAIN for 3 days
without any PAIN MEDICATION, MY whole bad is weak,
I have Pain in MY RIGHT KIDNEY That I never had
before. I may Have a NEW INFECTION IN MY KIDNEY,
MY Urine is cloudy and smells bad. ON 6.27.14 Dr. Stock
removed MY MEDICAL Hold. ON 6.4.14 Dr. Hadley FROM LOMAS
Linda Hospital recommended a 2nd opinion from UCSD.
a transfer to sac-IV will cause a delay in treatment
that will cause substantial harm to MY HEALTH,
and ME starting OVER again with a NEW medical staff,
When I'm in need of urgent medical attention

Inmate/Parolee Signature: _Charles Holmes_          Date Submitted: 7.
7.1.14

RECEIVED
JUL 03 2014
LOCAL
HC Appeals
I CAB
NOV 2 5 2014
COMPLETED
HC APPEALS

**B. Continuation of CDCR 602, Section B only (Action requested):** _____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

Inmate/Parolee Signature: _Charles Holmes_          Date Submitted: 7.1.14

 CALIFORNIA CORRECTIONAL
# HEALTH CARE SERVICES


**Date:** NOV 2 5 2014

**To:**   HOLMES, CHARLES (AL0671)
California State Prison – Sacramento
P.O. Box 29
Represa, CA 95671-0002

**From:**   California Correctional Health Care Services
Inmate Correspondence and Appeals Branch
P.O. Box 588500
Elk Grove, CA 95758

**Tracking/Log # :**   CAL HC 14033383

This appeal was reviewed by Inmate Correspondence and Appeals Branch staff on behalf of the Deputy Director, Policy and Risk Management Services. All submitted information has been considered.

## DIRECTOR'S LEVEL DECISION:

Appeal is denied. This decision exhausts your administrative remedies.

## APPEAL REQUESTS:

You are requesting:
- To be seen by a doctor or sent to the hospital to check your kidney function.
- Medical staff to follow Dr. Hadleys', from Loma Linda Hospital, recommendation of second opinion from UCSD hospital.

## BASIS FOR DIRECTOR'S LEVEL DECISION:

Your appeal file and documents obtained from your Unit Health Record were reviewed by licensed clinical staff. These records indicate:
- On July 15, 2014, you were transferred to California State Prison Sacramento.
- Documentation indicates you have received ongoing Primary Care Provider (PCP) follow up evaluation and treatment related to your appeal issues since transferring.
- On October 8, 2014, you were evaluated by UCSF with completion of a cystoscopic evaluation of your kidneys, ureters, and bladder; you have significant kidney problems and your provider is currently working with UCSF to plan your care and assist with management.

You are advised to utilize the CDCR 7362, Health Care Services Request Form, process to access health care services, as required by department policy, for additional health care concerns.

Be advised, while you have a right to request treatment, it is inappropriate for an inmate/patient to recommend a treatment plan and then expect a physician to implement the requested treatment plan. Private consultants may recommend treatment; however, it is determined by health care staff whether or not to implement such recommendations. This decision is based on the criteria set forth in CCR, Title 15, Section 3354 (c) which states in part: "(c) *Private Consultants*. Health care personnel not employed by the department are not authorized to order treatment for an inmate. Such persons may offer opinions and recommendations for consideration by department health care staff."

---

CALIFORNIA CORRECTIONAL
**HEALTH CARE SERVICES**

P.O. Box 588500
Elk Grove, CA 95758

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS AND REHABILITATION

**PATIENT/INMATE HEALTH CARE APPEAL**

CDCR 602 HC (REV. 04/11)

Side 1

| STAFF USE ONLY | Institution: | Log #: | Category: |
|---|---|---|---|
| Emergency Appeal ☐Yes ☐No | SAC HC | 15030531 | 8 |
| Signature: Date: | FOR STAFF USE ONLY | | |

You may appeal any California Prison Health Care Services (CPHCS) decision, action, condition, omission, policy or regulation that has a material adverse effect upon your welfare. See California Code of Regulations, Title 15, Section (CCR) 3084.1. You must send this appeal and any supporting documents to the Health Care Appeals Coordinator (HCAC) within 30 calendar days of the event that lead to the filing of this appeal. If additional space is needed, only one CDCR Form 602-A will be accepted. Refer to CCR 3084 for further guidance with the appeal process. No reprisals will be taken for using the appeal process.

Appeal is subject to rejection if one row of text per line is exceeded.          WRITE, PRINT, or TYPE CLEARLY.

| Name (Last, First): | CDC Number: | Unit/Cell Number: | Assignment: |
|---|---|---|---|
| Holms Charles | A10671 | C-3-109 | 7B.891,AM |

State briefly the subject/purpose of your appeal (Example: Medication, To See Specialist, etc.):
Denial Delay of access to TREATMENT

A. Explain your issue (If you need more space, use Section A of the CDCR 602-A): I have a
History of Ureteral sthicture with obstruction. now I have
Problem that my urine is backing up to my kidney from
My bladder. I'm in very bad pain daily and both

B. Action requested (If you need more space, use Section B of the CDCR 602-A): To be
seen By a Urologist specialist

☐ Supporting Documents: Refer to CCR 3084.3.

List supporting documents attached (e.g. Trust Account Statement; CDCR 7410, Comprehensive Accommodation Chrono; CDCR 7362, Request for Health Care Services; etc.):

☑ No, I have not attached any supporting documents. Reason : _____

Patient/Inmate Signature: _Chas Holms_          Date Submitted: 2.14.2015

☐ By placing my initials in this box, I waive my right to receive an interview.

RECEIVED
I CAB
AUG 10 2015
CK
HC APPEALS

U
S
E

O
N
L
Y

---

**C. First Level - Staff Use Only**          Staff – Check One: Is CDCR 602-A Attached? ☑Yes ☐No

This appeal has been:

☐ Bypassed at the First Level of Review. Go to Section E.

☐ Rejected (See attached letter for instruction) : Date: _____ Date: _____ Date: _____ Date: _____

☐ Cancelled (See attached letter): Date: _____

☑ Accepted at the First Level of Review
Assigned to: J. Ma, MD          Title: P&S          Date Assigned: 2/18/15 Date Due: 4/1/15

First Level Responder: Complete a First Level response. Include interviewer's name, title, interview date, location, and complete the section below.

Date of interview: 3/20/ 2015          Interview Location: C Yard Medical

Your appeal issue is: ☐Granted ☐Granted in part ☑Denied ☐Other:

See attached letter. If dissatisfied with First Level response, complete Section D.

Interviewer: J. Ma, MD          Title: P&S          Signature: _____          Date completed: 3/20/15
(Print Name)

NCF +8.5

Reviewer: I-Bal, MD          Title: C P&S          Signature: _____
(Print Name)

Date received by HCAC: 2/18/15          HCAC Use Only
Date mailed/delivered to appellant: 4/1/15

STATE OF CALIFORNIA
**INMATE/PAROLEE APPEAL FORM ATTACHMENT**
CDCR 602-A (08/09)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

**Side 1**

| IAB USE ONLY | Institution/Parole Region: | Log #: | Category: |
|---|---|---|---|
| | SAC Hc | 15030531 | 8 |
| | | FOR STAFF USE ONLY | |

Attach this form to the CDCR 602, only if more space is needed. Only one CDCR 602-A may be used.

Appeal is subject to rejection if one row of text per line is exceeded.

WRITE, PRINT, or TYPE CLEARLY in black or blue ink.

| Name (Last, First): | CDC Number: | Unit/Cell Number: | Assignment: |
|---|---|---|---|
| HOLMES Charles | AL0671 | C-3-109 | |

A. Continuation of CDCR 602, Section A only (Explain your issue) : MY KiDNEY OR
INFECTED, I'M NOT GETTING any medical TREATMENT
FROM OUT UROLOGIST SPECIALIST, I was SEEN IN
SEPTEMBER 17, 2014 by a SPECIALIST aT UCSF,
But THE SPECIALIST COULDN'T FIX MY PROBLEM,
NOW I'M HERE IN PaiN and WITH a INFECTION
Daily. THis Delay is cause substantial HARM
TO MY HEALTH.

Inmate/Parolee Signature: _____  Date Submitted:
2-16-2015

B. Continuation of CDCR 602, Section B only (Action requested): _____

Inmate/Parolee Signature: _____  Date Submitted: _____

 CALIF
**HEAI**

NAL
**CES** 

Date: OCT 2 6 2—

To: HOLMES, CHARL
California State Pri
P.O. Box 29
Represa, CA 95671-0002

From: California Correctional Health Care Services
Inmate Correspondence and Appeals Branch
P.O. Box 588500
Elk Grove, CA 95758

**Tracking/Log # :**   SAC HC 15030531

This appeal was reviewed by Inmate Correspondence and Appeals Branch staff on behalf of the Deputy Director, Policy and Risk Management Services. All submitted information has been considered.

**DIRECTOR'S LEVEL DECISION:**

Appeal is denied. This decision exhausts your administrative remedies.

**APPEAL REQUESTS:**

You are requesting to be seen by a urologist specialist.

**BASIS FOR DIRECTOR'S LEVEL DECISION:**

Your appeal file and documents obtained from your Unit Health Record were reviewed by licensed clinical staff. These records indicate:

- You have received ongoing Primary Care Provider (PCP) and specialist follow up and treatment to October 7, 2015, for your history of urethral stricture and recurrent urinary tract infections (UTI) including consultations with outside urologists on September 17, and October 8, 2014, and July 15, 2015. At your last appointment with the outside urologist on July 15, 2015, the recommendation was for self-catherization every three hours to empty your bladder. You were told there are no surgical options that would improve your current situation and were advised that you need to drain your urinary system to reduce your UTI risk and intermittent catherization would provide that. You were counseled that with intermittent catherization in the future you will have bacteruria (the presence of bacteria in the urine) chronically but that this does not represent UTI which for a catherizing patient is symptoms plus documentation of bacteria in your urine.
- You continue to be enrolled in the Chronic Care Program where your medical conditions and medications needs are closely monitored, with care provided as determined medically indicated by the PCP, in accordance with appropriate policies and procedures.

You may request the services of an outside consultant by following the directions in the California Code of Regulations, Title 15, Section 3354(c). However, be advised all costs associated with an outside consultation, including evaluations, tests, custodial supervision, transportation, etc., are the responsibility of the person requesting the outside evaluation.

CALIFORNIA CORRECTIONAL
**HEALTH CARE SERVICES**

P.O. Box 588500
Elk Grove, CA 95758

Inmates may not demand particular medication, diagnostic evaluation, course of treatment, or accommodation chronos. The California Code of Regulations (CCR), Title 15, Section 3354, Health Care Responsibilities and limitations, (a) Authorized Staff, states, "Only facility-employed health care staff, contractors paid to perform health services for the facility, or persons employed as health care consultants shall be permitted within the scope of their licensure, to diagnose illness or, prescribe medication and health care treatment for inmates. No other personnel or inmate may do so."

While the health care administrative appeals process is an important means of setting forth your health care concerns, it is not a substitute for direct communication about your health with your medical care providers. You are encouraged to continue your care with your assigned medical care providers and share with them new or additional clinical information about your conditions that you believe may affect your care. However, California law directs your medical care providers to offer and provide only the care they determine to be currently medically necessary for you, in accordance with appropriate policies and procedures. Previous orders from other medical facilities or staff, input from medical consultants, and/or your own personal preferences may be considered, but do not control the professional judgment of your current medical care providers.

After review, no intervention at the Director's Level of Review is necessary as your medical condition has been evaluated and you are receiving treatment deemed medically necessary.

RULES AND REGULATIONS:

The rules governing these issues are: California Code of Regulations, Title 15; Inmate Medical Services Policies and Procedures; and the Department Operations Manual.

ORDER:

No changes or modifications are required by the institution.

J. Lewis, Deputy Director
Policy and Risk Management Services
California Correctional Health Care Services