BRIAN A. VOGEL (No. 167413)
LAW OFFICES OF BRIAN A. VOGEL, PC
770 County Square Drive, Suite 104
Ventura, CA 93003
Telephone: (805) 654-0400
Facsimile: (805) 654-0326
E-Mail: brian@bvogel.com

Attorneys for Plaintiff Charles Holmes

## UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES HOLMES (AL-0671), an individual,<br><br>                              Plaintiff,<br><br>            vs.<br><br>DR. ESTOCK, in her official and individual capacities; et al.,<br><br>                              Defendants.<br>_____ | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

3:16-cv-02458-MMA-BLM

**PLAINTIFF'S OPPOSITION TO DEFENDANTS ESTOCK, KERNAN, BROWN, MONTGOMERY, NASIR, AND CURRIER'S MOTION TO DISMISS  SECOND AMENDED COMPLAINT**

Date: August 27, 2018
Time: 2:30 p.m.
Courtroom: 3D
Judge: The Honorable Michael M. Anello
Trial Date: Not Yet Set
Action Filed: 9/28/2016

Plaintiff Charles Holmes ("Plaintiff") submits this Opposition to Defendants' Motion to Dismiss on the grounds in the following memorandum points and authorities, the records on file, and any other evidence introduced at the hearing on this matter.

1

## TABLE OF CONTENTS

I.  INTRODUCTION ................................................................. 1

II.  FACTUAL BACKGROUND.................................................... 1

III.  EXHAUSTION OF ADMINISTRATIVE REMEDIES ...................... 7

IV.  ARGUMENT...................................................................... 9

A.  The Legal Standard of Review For
    Rule 12(B)(6) Motions to Dismiss Is Stringent
    and Dismissal is Rarely Granted ........................................... 9

B.  Plaintiff has Sufficiently Pled Facts Showing that
    Defendants Estock and Currier, his Primary Care Physicians
    At CSP-CAL, Were Personally Aware of the Substantial
    Risk of Harm to Plaintiff But Disregarded an Excessive
    Risk to his Health and Safety with Deliberate Indifference
    To His Serious Medical Needs ............................................. 10

C.  Plaintiff Has Sufficiently Pled a Claim for Relief Against
    Defendants Kelso, Kernan, Brown, Montgomery, Nasir
    And Currier Violation of 42 U.S.C. § 1983 for Deliberate
    Indifference to Serious Medical Needs ................................. 14

V.  CONCLUSION.................................................................. 19

**PLAINTIFF'S OPPOSITION TO DEFENDANTS ESTOCK, KERNAN, BROWN, MONTGOMERY, NASIR, AND CURRIER'S MOTION TO DISMISS SECOND AMENDED COMPLAINT**

# TABLE OF AUTHORITIES

*Allen v. City of Beverly Hills,*
911 F. 2d 367; 373 (9th Cir. 1990) .............................................. 18

*Ancata v. Prison Health Servs., Inc.,*
769 F.2d 700, 704 (11th Cir. 1985) ............................................ 12

*Arnold on Behalf of H.B. v. Lewis,*
803 F.Supp. 246, 257 (D.Ariz. 1992) ......................................... 12

*Ashcroft v. Iqbal,*
556 U.S. 662, 678 (2009) ............................................................. 9

*Ass'n for L.A. Deputy Sheriffs v. Cty. of L.A.,*
 648 F.3d 986, 991 (9th Cir. 2011) ............................................... 9

*Berry v. Peterman,*
F.3d ---, 2010 WL 1780152 (7th Cir. May 5, 2010)................... 11

*Burgess v. Filler,*
2007 WL 430742, at *11 (E.D.Cal. Feb. 6, 2007)....................  13

*Cabrales v. County of Los Angeles,*
864 F.2d 1454, 1460-61 (9th Cir. 1988) .................................... 16

*Cervantes v. City of San Diego,*
5 F.3d 1273, 1275 (9th Cir. 1993) ................................................ 9

*Chance v. Armstrong,*
143 F.3d 698, 703-704 (2d Cir. 1998) ................................. 10, 12

*Chew v. Gates,*
27 F.3d 1432, 1446 (9th Cir. 1994) ........................................... 16

*City of Canton, Ohio v. Harris,*
489 U.S. 378, 389-391 (1989) .................................................... 16

*Clouthier v. Contra Costa County,*
591 f.3d 1232, 1249-1250 (9th Cir. 2010)................................. 16

**PLAINTIFF'S OPPOSITION TO DEFENDANTS ESTOCK, KERNAN, BROWN, MONTGOMERY, NASIR, AND CURRIER'S MOTION TO DISMISS SECOND AMENDED COMPLAINT**

*Croft v. Hampton*,
286 Fed Appx. 955, 956-57 (8th Cir. 2008) .................................................. 11

*Cunningham v. Grozik*,
2002 WL 1777278, at *1-2 6 (N.D. Ill. Aug. 1, 2002) ................................. 13

*Dittman v. California*,
191 F.3d 1020, 1026 (9th Cir. 1999) ............................................................ 16

*Dominguez v. Corr. Med. Servs.*,
555 F.3d 543, 550 (6th Cir. 2009) ......................................................... 10, 11

*Eres v. Cty. of Alameda*,
1999 WL, 66519, at *8 (N.D.Cal. Feb. 1, 1999) ......................................... 11

*Farmer v. Brennan*,
511 U.S. 825, 842 (1994) ......................................................................... 10, 11

*George v. Sonoma County Sheriff's Department*,
Civ. No. 08-2675-EDL, 2011 WL 2975850, at *7-8
(N.D. Cal. July 22, 2011) .............................................................................. 17

*Gibson v. Cty. of Washoe*,
Nev., 290 F.3d 1175 (9th Cir. 2002) ...................................................... 13, 16

*Guilbeau v. Terrebonne Parish*,
2004 WL 2988479, at *1-2, 7 (E.D.La. Dec. 9, 2004) ................................. 12

*Haber v. Melo*,
502 U.S. 21, 25 (1991) ................................................................................... 16

*Hagan v. California Forensic Medical Group*,
No. CIV. S-07-1095 LKK/DAD, 2009 WL 728465, at *7
(E.D. Cal. Mar. 5, 2009) ............................................................................... 17

*Hoptowit v. Ray*,
682 F.2d 1237, 1252-54 (9th Cir. 1982) ...................................................... 11

iii

**PLAINTIFF'S OPPOSITION TO DEFENDANTS ESTOCK, KERNAN, BROWN, MONTGOMERY, NASIR, AND CURRIER'S MOTION TO DISMISS SECOND AMENDED COMPLAINT**

*Hunt v. Dental Dep't,*
865 F.2d 198 (9th Cir. 1989) ....................................................... 13

*Jackson v. McIntosh,*
90 F.3d 330, 332 (9th Cir. 1995)................................................... 12

*Jett v. Penner,*
439 F.3d 1091, 1096 (9th Cir. 2006) ..................................... 10, 11

*Lacey v. Maricopa County (Arpaio),*
693 F.3d 896, 924 (9th Cir. 2012) ............................................... 10

*Lee v. County of Los Angeles,*
250 F.3d 668, 681 (9th Cir. 2001) ............................................... 15

*Lolli v. Cty. of Orange,*
351 F.3d 410, 419 (9th Cir. 2003) .......................................... 11, 13

*Long v. County of Los Angeles,*
442 F.3d 1178 (9th Cir. 2006) ............................................... 13, 17

*Lopez v. Smith,* 203 F.3d 1122,
1127 (9th Cir. 2000)..................................................................... 18

*Martin v. Cty. of Sacramento,*
2010 WL 670784, at *16-17 (E.D.Cal. Feb. 19, 2010) ............... 12

*McElligott v. Foley,*
182 F.3d 1248, 1255 (11th Cir. 1999) ......................................... 11

*Monell v. Department of Social Services,*
436 U.S. 658 (1978)........................................................... 15, 16, 17

*Natale v. Camden Cty. Corr. Facility,*
318 F.3d 575, 582 (3d Cir. 2003)........................................... 10, 12

*Price v. Sery,*
513.F.3d 962, 966 (9th Cir. 2008) ............................................... 18

iv

**PLAINTIFF'S OPPOSITION TO DEFENDANTS ESTOCK, KERNAN, BROWN, MONTGOMERY, NASIR, AND CURRIER'S MOTION TO DISMISS SECOND AMENDED COMPLAINT**

*Ramirez v. Ferguson*,
2011 WL 1157997 (W.D. Ark. Mar. 29, 2011) ........................................... 17

*Redman v. County of San Diego*,
942 F.2d 1435, 1446 (9th Cir. 1991) ......................................................... 16

*Rice v. Reynolds*,
2009 WL 839134, at *5 (E.D. Pa., Mar 27, 2009)...................................... 12

*Smith v. Jenkins*,
919 F.2d 90, 93 (8th Cir. 1990) ................................................................ 12

*Starr v. Baca*,
652 F.3d 1202, 1216 (9th Cir. 2011) ........................................................... 9

*Strain v. Sandham*,
2009 WL 172898, at *6 (E.D.Cal. Jan. 23, 2009) ...................................... 12

*Streit v. County of Los Angeles*,
236 F.3d 552, 555-56 (9th Cir. 2001) ......................................................... 17

*Supermail Cargo Inc. v. United States*,
68 F.3d 1204, 1206-07 (9th Cir. 1995) ......................................................... 9

*Thomas v. Arevalo*,
1998 WL 427623, at *8 (S.D.N.Y. July 28, 1998) ................................ 11, 12

*Vann v. Vandenbrook*,
596 F.Supp.2d 1238, 1243 (W.D.Wisc. 2009) ........................................... 11

*Walker v. Benjamin*,
293 F,3d 1030, 1040 (7th Cir. 2002) ......................................................... 13

*Wood v. Sunn*,
865 F.2d 982, 987-90 (9th Cir. 1988) ....................................................... 12

*Young v. Kazmerski*,
266 Fed. Appx. 191, 193 (3d Cir. 2008)..................................................... 11

**PLAINTIFF'S OPPOSITION TO DEFENDANTS ESTOCK, KERNAN, BROWN, MONTGOMERY, NASIR, AND CURRIER'S MOTION TO DISMISS SECOND AMENDED COMPLAINT**

## FEDERAL STATUTES

42 U.S.C. § 1983   .............................................................. 14, 15, 16

Fed.R.Civ. Proc. 15(a) ................................................................ 18

vi

# I.  INTRODUCTION

Defendants E. Estock, M.D., Scott Kernan, Edmund G. Brown, Warren L. Montgomery, Muhammad Nasir, M.D., and Theresa Currier, D.O. (Defendants) seek dismissal of Plaintiff Charles Holmes' Second Amended Complaint (SAC, ECF No. 55) pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Plaintiff has added substantial additional facts to the SAC to support his claims.  Defendants' motion to dismiss lacks merit and should be denied. During his incarceration in the California prison system, Defendants were, and continue to be, deliberately indifferent Plaintiff's serious medical needs.  Plaintiff's perilous physical condition was well known to Defendants Estock and Currier but was not adequately treated by them.  The supervisory Defendants were deliberately indifferent to plaintiff's serious medical needs because their policies and practices were the moving force behind this constitutional tort. Defendants' motion to dismiss should therefore be denied.  Alternatively, if the Court finds that any claims have not been sufficiently pleaded, Plaintiff respectfully requests leave to file a third amended complaint.

# II.  FACTUAL BACKGROUND

In his Second Amended Complaint, (Doc. No. 55, "SAC"), Plaintiff, Charles Holmes, ("Mr. Holmes") set forth the factual basis for his claims in detail.  For the convenience of the Court and counsel, facts which are new to the SAC or worded differently from the FAC are bolded.

Mr. Holmes is presently incarcerated at Calipatria State Prison (Calipatria) and the actions giving rise to his claims took place at Calipatria and California State Prison, Sacramento (CSP-Sac).  (SAC ¶ 10) He came into the custody of the CDCR in 2012 with a congenital defect in his left kidney requiring medical treatment. (SAC ¶ 3)

**PLAINTIFF'S OPPOSITION TO DEFENDANTS ESTOCK, BALL, CHAIKEN, AND REGULES' MOTION TO DISMISS FIRST AMENDED COMPLAINT**

At age 11, Mr. Holmes was diagnosed with a narrowing of his left ureter and underwent a reconstructive bladder surgery. (SAC ¶ 22)  In 2010, he underwent a surgical procedure to his left kidney at USC, which was unsuccessful. (SAC ¶ 23) From 2012 until July 2014, he was treated by two qualified and diligent urologists, Dr. Fawcett and Dr. David Hadley. (SAC ¶ 3) Both recommended further surgical intervention at UCSD to treat his kidney which was not draining properly either due to an obstruction ("stricture"), or because his ureter, (the valve connecting the kidney to the bladder), was enlarged and allowed urine from the bladder to flow backwards into the kidney, or both. (*Id.*)

Dr. Fawcett replaced an infected kidney stent, and later, on June 18, 2013, he recommended that Plaintiff receive an "auto transplant," which is a "procedure that repositions the kidney" to allow "urine in the kidney to drain properly into the bladder." (SAC ¶ 24, 26) Dr. Fawcett was not equipped to perform such a procedure, so he recommended "tertiary consultation for possible surgery," which resulted in his referral to Loma Linda University Hospital.  (SAC ¶ 26)

On October 21, 2013, Mr. Holmes was evaluated by David Allen Hadley, M.D., a urologist from Loma Linda University, who observed that Mr. Holmes had a "left ureteral stricture status post two repairs in the past with recent failure from 2011 at USC." (SAC ¶ 27)  The doctor recommended the insertion of a nephrostomy tube. (*Id.*) Ten days later, Dr. Hadley placed a nephrostomy tube in his left kidney to drain the kidney and bypass his ureter obstruction. (SAC ¶ 28)

In May 2014, Dr. Hadley replaced the nephrostomy tube. (SAC ¶ 28)  The doctor gave instructions that the tube not be removed until a second opinion could be obtained regarding potential surgical interventions.  (SAC ¶¶ 29-30) The nephrostomy tube allowed the obstructed or partially obstructed kidney to function and drain properly. (SAC ¶ 30) Failure to maintain appropriate drainage with either

**PLAINTIFF'S OPPOSITION TO DEFENDANTS ESTOCK, BALL, CHAIKEN, AND REGULES' MOTION TO DISMISS FIRST AMENDED COMPLAINT**

a nephrostomy tube, ureteral stent, or both, could lead to chronic infection arising from the undrained urine and waste stored in the kidney. (*Id.*)

After the surgery, Defendant Estock, Plaintiff's Primary Care Physician ("PCP") at Calipatria, explained to Mr. Holmes the damage that could be done to his kidney if he removed the nephrostomy tube including, but not limited to, infection, loss of kidney function or the kidney itself and/or death. (SAC ¶ 29)

As described in more detail below, Mr. Holmes filed a grievance relating to his treatment on July 1, 2014.  He complained that the area around the nephrostomy tube had become infected, and the tube was therefore removed (but not replaced) on July 14, 2014.  (SAC ¶ 42) Rather than following the advice of Dr. Hadley and Dr. Fawcett for Mr. Holmes to arrange for a medical transfer to allow a surgical consult at UCSD, Defendant Estock allowed Plaintiff to be transferred to CSP-Sac.  **At a minimum, Dr. Estock should have arranged to have Mr. Holmes' nephrostomy tube replaced either before he was transferred or as soon as possible after his arrival at the new facility. (SAC ¶ 32)**

**Eleven days after he arrived at CSP-SAC, on July 24, 2014, Mr. Holmes was interviewed by Dr. Estock as part of an inmate healthcare grievance appeal.  (SAC ¶ 33) Rather than arranging for appropriate and clearly medically necessary care, i.e. replacement of the nephrostomy tube at a minimum, Holmes' kidney drainage problem was not treated.  (*Id.*)**

**Defendants, KERNAN, BROWN, MONTGOMERY, NASIR, ESTOCK and CURRIER, pursuant to Title 15, § 3379 of the California Code of Regulations, were [and still are] empowered to transfer Mr. Holmes to any facility due to his medical condition.  (SAC 47 and 49)**

**PLAINTIFF'S OPPOSITION TO DEFENDANTS ESTOCK, BALL, CHAIKEN, AND REGULES' MOTION TO DISMISS FIRST AMENDED COMPLAINT**

On September 17 and October 8, 2014, he was then seen by urologist Marshall Stoller, M.D. from UC San Francisco Hospital (UCSF) who agreed that he may need an auto transplant in the future. (SAC ¶ 34)

In another consultation, a doctor from UCSF suggested that Plaintiff employ double voiding of his bladder as treatment in lieu of a long-term surgical remedy. (SAC ¶ 35)  This proved to be ineffective as reflected in Plaintiff's PCP notes from CSP-Sac on 11/19/2014.  (*Id.*)  On that date, Plaintiff's PCP Dr. James Wedell wrote, "patient has complied with UCSF urology treatment recommendations. Zero help. No response to UCSF treatment suggestion and strongly recommend transfer to California State Prison near UCSD! ASAP!" (*Id.*)

Since 2014, Mr. Holmes has had recurring urinary tract infections with only temporary relief from recommended antibiotics and self-catheterization. (SAC ¶ 36)   This treatment was not efficacious and the antibiotics have become less effective and produced multiple antibiotic resistant organisms. *Id.*

Once all nonsurgical treatments recommended by Dr. Stoller of UCSF had failed, Mr. Holmes requested another urological opinion, which was denied because the doctors at CSP-Sac and the health care providers at CCHCS determined another opinion was not medical necessary. (SAC ¶ 37) Mr. Holmes was transferred back to CSP-CAL in July of 2016.  Thereafter, repeated attempts were made to provide ongoing antibiotics to cure the persistent urinary tract infections. No medical progress could be discerned and the report on September 4, 2015 indicated that "his infection has shown multiple resistant strains to certain medications." (SAC ¶ 38)  On October 6, 2016, Holmes received a telemedicine consult with Dr. Fawcett, the urologist, at Alvarado Hospital whom he had previously seen in 2013. (SAC ¶ 39)   Dr. Fawcett noted that prior recommendations to go to UC San Diego were not done and he again recommended, three years later, that Holmes be sent to the tertiary hospital UC San

**PLAINTIFF'S OPPOSITION TO DEFENDANTS ESTOCK, BALL, CHAIKEN, AND REGULES' MOTION TO DISMISS FIRST AMENDED COMPLAINT**

Diego, so he could receive the tertiary level of urologic care necessary to definitively correct the problem.  (*Id.*)  This recommendation was again ignored. *Id*.

Since his transfer, he has been treated for his kidney condition by another Dr. Hadley, Dr. Dean Hadley, M.D., who turns out to be Dr. David Hadley's uncle. (SAC ¶ 40)  Mr. Holmes' painful urinary tract infections have continued and he has not received a new nephrostomy tube, stent, or any other surgical intervention. (*Id.*) Over the past two years, he has begun to experience pain in his right kidney which is not unusual when the left kidney is swollen and chronically infected.  (*Id.*)

**Defendant Dr. Theresa Currier ("CURRIER") is Plaintiff's current primary care physician ("PCP") at CSP-CAL.  (SAC ¶ 18)   Defendant CURRIER possesses all of Plaintiff's medical records and was, and is aware that a substantial risk of serious harm has existed to Plaintiff and the substantial risk has been obvious.  (*Id.*)  Defendant CURRIER has [also] stopped giving Plaintiff pain medications while he suffers from persistent urinary tract infections. (SAC ¶ 7)**

**With respect to the non-treating, supervisory Defendants, Scott Kernan ("KERNAN") is the current Secretary of the California Department of Corrections and Rehabilitation (CDCR).  KERNAN is responsible for the policies and practices of the organization.  In setting and maintaining those policies and practices, KERNAN personally acted to deprive Plaintiff of his rights and failed to act to protect Plaintiff from the constitutional injuries detailed herein.  (SAC ¶ 14)**

**Defendant Edmund G. Brown ("Governor BROWN") is the current Governor of the State of California, having succeeded Former Governor Arnold Schwarzenegger in January, 2011.  Governor BROWN had the authority and the means to establish or to discontinue correctional authority**

**PLAINTIFF'S OPPOSITION TO DEFENDANTS ESTOCK, BALL, CHAIKEN, AND REGULES' MOTION TO DISMISS FIRST AMENDED COMPLAINT**

policies and practices, including the policies that resulted in the failure to provide adequate medical care to Plaintiff. (SAC ¶ 15)

Defendant Warren L. Montgomery ("MONTGOMERY") is the warden at CSP-CAL. (SAC ¶ 16)

Defendant Muhammad Nasir ("NASIR") is the current Health Care CEO at CSP-CAL. (SAC ¶ 17)

Defendants KERNAN, BROWN, MONTGOMERY AND NASIR, in conjunction with the powers vested in Defendant KELSO as the Receiver appointed to oversee the administration, control, management, operation and financing of the CCHCS, has the authority to comply with any order made by this court authorizing injunctive relief to remedy Plaintiff's condition. (SAC ¶ 15-17)

Defendants acted under color of state law in that Defendants are state employees, operate the state prisons, and carry out the policies and practices described herein under the authority of California statute, regulation, and policy, to control Plaintiff's life, prison housing location, housing conditions, and medical care. (SAC ¶ 54)

The actions of the Defendants in denying Plaintiff necessary medical care was not based on a medical reason, but rather economic and/or other constitutionally impermissible reasons unrelated to the provision of medical services. (SAC ¶ 59)

The Defendants acted with deliberate indifference in hiring/retaining, training, and supervising employees such that they violated Plaintiff's constitutional rights. (SAC ¶ 60)

Plaintiff's medical care providers breached their duties and violated numerous CDCR policies governing the provision of necessary medical care in failing to treat Plaintiff's condition. (SAC ¶ 61) These failures were then

PLAINTIFF'S OPPOSITION TO DEFENDANTS ESTOCK, BALL, CHAIKEN, AND REGULES' MOTION TO DISMISS FIRST AMENDED COMPLAINT

ratified by policy-making level employees during the grievance process resulting in a further failure to treat Plaintiff's serious medical need and thereby deprive him of his constitutional rights. (*Id.*)

With respect to the standard of care, Plaintiff retained a renowned urologist and professor of Urology at University of California Los Angeles ("UCLA") Medical Center, Dr. Dudley Danoff, to review Plaintiff's medical history and render an opinion regarding the care and treatment Plaintiff has received while in custody.  (SAC ¶ 5)

Dr. Danoff, has opined, in essence, that in the absence of medically necessary care to insure proper drainage of Mr. Holmes' chronically infected left kidney with a nephrostomy tube, stent or through a more permanent surgical repair, the loss of kidney functionality in one or both [of Plaintiff's] kidneys is inevitable.  (SAC ¶ 6)   Based upon the most recent medical records reviewed by Dr. Danoff from February 2018, it is evident that Holmes continues to have severe hydrophrenosis with the inability to empty the kidney as well as a reflux with a megaureter. (*Id.*)

Unless Plaintiff's diseased left kidney is surgically repaired for removed, he remains at grave risk for renal failure.  (SAC ¶ 40)

### III. EXHAUSTION OF ADMINISTRATIVE REMEDIES

Plaintiff attached copies of his administrative grievances and appeals as an exhibit to his Complaint as well as to the First and Second Amended Complaints. On July 1, 2014, Mr. Holmes submitted a Patient-Inmate Health Care Appeal while he was incarcerated at Capitaria. (Grievance #1)   Mr. Holmes, in handwritten, capitalized block print, wrote that he had not seen Dr. Estock in 6 weeks, that he was experiencing kidney pain in both kidneys including pain in his right kidney that he had never had before, and that he had an infection verified by a nurse's urine test and his cloudy and bad smelling urine. (SAC Ex.1, p.1-2)  He requested

**PLAINTIFF'S OPPOSITION TO DEFENDANTS ESTOCK, BALL, CHAIKEN, AND REGULES' MOTION TO DISMISS FIRST AMENDED COMPLAINT**

that his kidney function be tested, noted that Dr. Estock had removed his medical hold on June 27, 2014 after Dr. Hadley recommended a second opinion at UCSD, and noted that a transfer to CSP-Sac would cause a delay in treatment that would cause substantial harm to his health, and "starting over with new medical staff when [he was] in urgent need of medical treatment." *Id.* Plaintiff's grievance proved to be quite prescient.

Defendant Estock interviewed Mr. Holmes by telephone about this grievance on July 24, 2014. She was aware that Drs. Hadley and Fawcett recommended that he be referred to UCSD for surgical repair of his left kidney. (*Id.*) Grievance #1 was denied on August 5, 2014 by Defendant Ball. (*Id.*) The CDCR file stamp from "HC Appeals" indicates that appeal of the grievance was completed on November 25, 2014. (*Id.*)

On February 16, 2015, Mr. Holmes submitted another Patient-Inmate Health Care Appeal, while still housed at CSP-Sac, complaining that his urine was backing up into his kidney from his bladder, causing pain (Grievance #2). (*Id.*, p. 4-5) He complained that he was not getting treatment from out [sic] urologist specialist. He acknowledged being seen by a specialist at UCSF but the specialist could not fix his problem and that he was in pain with a [sic] infection daily. (*Id.*) His capitalized block letter grievance concluded that "This delay is cause [sic] substantial harm to my health." In essence, Mr. Holmes wanted to be seen by a conscientious urologist who would help him so that he would not have to live with the persistent pain of chronic urinary tract infections and the fear that he would eventually face renal failure. Despite the fact his complaints were well-grounded and irrefutably verified by his medical history, Grievance #2 was initially denied on April 1, 2015. Mr. Holmes appealed. (*Id.*) On October 26, 2015, J. Lewis denied the appeal of Grievance #2, stating "this decision exhausts your administrative remedies." (*Id.*, p.6) Mr. Holmes filed his complaint in this court

**PLAINTIFF'S OPPOSITION TO DEFENDANTS ESTOCK, BALL, CHAIKEN, AND REGULES' MOTION TO DISMISS FIRST AMENDED COMPLAINT**

on September 28, 2016, less than a year after the denial of the final administrative appeal of Grievance # 1 and less than two years after the denial of the final administrative appeal of Grievance # 2.

## IV.  ARGUMENT

**A.      The Legal Standard of Review For Rule 12(B)(6) Motions to Dismiss Is Stringent and Dismissal is Rarely Granted.**

Where a defendant moves to dismiss a complaint on the basis that the statute of limitations has run, the court may only grant such a motion if the allegations in the complaint, construed with the required liberality, would not permit the plaintiff to prove the statute was tolled. See *Supermail Cargo Inc. v. United States*, 68 F.3d 1204, 1206-07 (9th Cir. 1995); *Cervantes v. City of San Diego*, 5 F.3d 1273, 1275 (9th Cir. 1993) (citing *Wilson v. Garcia*, 471 U.S. 261, 276).

On a motion to dismiss for failure to state a claim, all allegations of material fact in the complaint must be taken as true and construed in the light most favorable to the nonmoving party, and the Court must draw all reasonable inferences in favor of the nonmoving party.  *Ass'n for L.A. Deputy Sheriffs v. Cty. of L.A.,* 648 F.3d 986, 991 (9th Cir. 2011).  Dismissal is proper only "if it appears beyond doubt that the non-movant can prove no set of facts to support its claims." *Id*. (internal quotation marks omitted).  Though the Court need not accept conclusory allegations as true, a complaint need only "state a claim to relief that is plausible on its face," by including "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).  "If there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6)."  *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).  More recently, the *en banc* Ninth Circuit explained: "*Iqbal* demands

9

**PLAINTIFF'S OPPOSITION TO DEFENDANTS ESTOCK, BALL, CHAIKEN, AND REGULES' MOTION TO DISMISS FIRST AMENDED COMPLAINT**

more of plaintiffs than bare notice pleading, see *Iqbal*, 556 US. at 677-78; *Twombly*, 550 US. at 562-63, but it does not require us to flyspeck complaints looking for any gap in the facts." *Lacey v. Maricopa County (Arpaio)*, 693 F.3d 896, 924 (9th Cir. 2012) (*en banc*).  Here, Plaintiff's claims are more than plausible on their face and the factual allegations set forth in the Second Amended Complaint allow the Court to draw the reasonable inference that the Defendants are liable for the misconduct alleged.

**B.      Plaintiff has Sufficiently Pled Facts Showing that Defendants Estock and Currier, his Primary Care Physicians at CSP-CAL, Were Personally Aware of the Substantial Risk of Harm to Plaintiff But Disregarded an Excessive Risk to his Health and Safety with Deliberate Indifference to His Serious Medical Needs.**

A determination of deliberate indifference involves a two-step analysis consisting of both objective and subjective inquiries. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "First, the plaintiff must demonstrate a serious medical need such that failure to provide treatment could result in further significant injury or unnecessary and wanton infliction of pain. Second, the plaintiff must show that the defendant's response to the medical need was deliberately indifferent." *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir.1992) (citations and internal quotations omitted).

A showing of deliberate indifference requires: (1) "a purposeful act or failure to respond to a prisoner's pain or possible medical need" and (2) "harm caused by the indifference." *Jett v. Penner*, 439 F.3d 1091,1096 (9th Cir. 2006) (citing *Estelle v. Gamble*, 429 U.S. 97,104 (1976)); see also *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 550 (6th Cir. 2009) (deliberate indifference equivalent to reckless disregard); *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003) (recklessness); *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998)

**PLAINTIFF'S OPPOSITION TO DEFENDANTS ESTOCK, BALL, CHAIKEN, AND REGULES' MOTION TO DISMISS FIRST AMENDED COMPLAINT**

(same). A plaintiff can demonstrate indifference by showing either that prison officials denied, delayed, or intentionally interfered with medical treatment or by the manner in which doctors provided care. *Jett, supra*. See also *Lolli v. Cty. of Orange*, 351 F.3d 410, 419 (9th Cir. 2003). Among the scenarios which may constitute deliberate indifference are "a failure to respond to a known medical problem, a failure to provide a system of ready access to adequate medical care, and a failure to provide a medical staff competent to examine and diagnose inmate's problems." *Eres v. Cty. of Alameda*, 1999 WL, 66519, at *8 (N.D.Cal. Feb. 1, 1999). See *Hoptowit v. Ray*, 682 F.2d 1237, 1252-54 (9th Cir. 1982). The requisite state of mind - knowledge of a substantial risk of serious harm - may be "demonstrated in the usual ways, including inference from circumstantial evidence." *Dominguez*, 555 F.3d at 550. See also *Farmer v. Brennan*, 511 U.S. 825, 842 (1994) (knowledge may be inferred by the fact-finder from "the very fact that the risk was obvious"). "[W]hether or not a defendant's conduct amounts to deliberate indifference has been described as a classic issue for the fact finder." *Young v. Kazmerski*, 266 Fed. Appx. 191, 193 (3d Cir. 2008).

Deliberate indifference may be "inferred when a doctor's treatment decisions are so far afield of accepted professional standards that no inference can be drawn that the decisions were actually based on medical judgment." *Vann v. Vandenbrook*, 596 F.Supp.2d 1238, 1243 (W.D.Wisc. 2009) (citing *Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006)). See also *Croft v. Hampton*, 286 Fed Appx. 955, 956-57 (8th Cir. 2008); *Thomas v. Arevalo*, 1998 WL 427623, at *8 (S.D.N.Y. July 28, 1998) (citing *Youngberg v. Romeo*, 457 U.S. 307, 323 (1982)). Moreover, "deliberate indifference may be established by a showing of grossly inadequate care as well as by a decision to take an easier but less efficacious course of treatment." *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999); see also *Berry v. Peterman*, F.3d ---, 2010 WL 1780152 (7th Cir. May 5, 2010) (choice of

**PLAINTIFF'S OPPOSITION TO DEFENDANTS ESTOCK, BALL, CHAIKEN, AND REGULES' MOTION TO DISMISS FIRST AMENDED COMPLAINT**

ineffective treatment; delays in providing proper care); *Chance*, 143 F.3d at 703-704 (choice of "easier or less efficacious treatment plan"); *Smith v. Jenkins*, 919 F.2d 90, 93 (8th Cir. 1990) ("grossly incompetent or inadequate care;" "decision to take an easier or less efficacious course of treatment;" or "[m]edical care so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care violates the Eighth Amendment"); *Arnold on Behalf of H.B. v. Lewis*, 803 F.Supp. 246, 257 (D.Ariz. 1992) ("grossly inadequate" care).

As established in numerous cases, evidence of an improper or ulterior motive strongly supports a conclusion that defendants failed to exercise sound medical judgment but instead acted with the requisite culpable mental state. See *Wood v. Sunn*, 865 F.2d 982, 987-90 (9th Cir. 1988) (failure to treat pain and urological condition in part from belief that plaintiff's pain was psychological or the was malingering; plaintiff made numerous attempts to get appropriate medical attention); *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1995); *Chance*, 143 F.3d at 704; *Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 704 (11th Cir. 1985) (delay of necessary treatment for "non-medical reasons"); *Natale*, 318 F.3d at 582-83 (same); *Strain v. Sandham*, 2009 WL 172898, at *6 (E.D.Cal. Jan. 23, 2009) (treatment decisions made for "non-medical reasons"). In addition to financial incentives, (e.g. *Chance*; *Ancata*), personal bias or animosity, (e.g. *Jackson*), a focus on suspicions of malingering may be considered an ulterior motive supporting an inference that defendants failed to take plaintiff's condition sufficiently seriously and thus acted recklessly in failing to provide proper care. *Thomas*, 1998 WL 427623, at *9. See also *Rice v. Reynolds*, 2009 WL 839134, at *5 (E.D. Pa., Mar 27, 2009) (taking away plaintiff's crutches under accusation of malingering, without performing sufficient testing); *Martin v. Cty. of Sacramento*, 2010 WL 670784, at *16-17 (E.D.Cal. Feb. 19, 2010) (diagnosis of possible malingering without obtaining plaintiffs previous medical records); *Guilbeau v.*

**PLAINTIFF'S OPPOSITION TO DEFENDANTS ESTOCK, BALL, CHAIKEN, AND REGULES' MOTION TO DISMISS FIRST AMENDED COMPLAINT**

*Terrebonne Parish*, 2004 WL 2988479, at *1-2, 7 (E.D.La. Dec. 9, 2004) (nurse's refusal to provide care due to insistence that inmate is malingering); *Cunningham v. Grozik*, 2002 WL 1777278, at *1-2 6 (N.D. Ill. Aug. 1, 2002). Cf. *Walker v. Benjamin*, 293 F,3d 1030, 1040 (7th Cir. 2002) (medical professionals' claim that they denied pain medication out of good-faith belief that inmate was malingering presented issue of fact for jury and was not grounds for summary judgment); *Burgess v. Filler*, 2007 WL 430742, at *11 (E.D.Cal. Feb. 6, 2007) (noting that callousness by some personnel, or "assumption that all prisoners are malingerers," were highly disturbing and would clearly create triable issue of fact if these parties' inappropriate responses actually led to further injury or enhancement of pain); *Long v. City, of Los Angeles*, 442 F.3d 1178 (9th Cir. 2006) (delays and denials of care for congestive heart failure; inmate was transferred to facility unequipped to care for acutely ill patients); *Lolli*, 351 F.3d at 419-21 (reversing summary judgment for failure to respond to serious medical needs of inmate known to be diabetic); *Gibson v. Cty. of Washoe*, Nev., 290 F.3d 1175 (9th Cir. 2002) (delay of medical screening and denials of care); *Hunt v. Dental Dep't*, 865 F.2d 198 (9th Cir. 1989) (delay in providing dental care with awareness that plaintiff's loss of dentures was causing severe pain and permanent damage).

   Plaintiffs' SAC is sufficient to establish an Eighth Amendment deliberate indifference claim against Defendant Estock and the Court should deny the Motion to Dismiss on this claim.  Following his submission of Grievance # 1 on July 1, 2014, after his stent and nephrostomy tubes were removed, Plaintiff had recurrent kidney infections.  These increasingly antibiotic resistant infections have continued up to the present day.  Mr. Holmes has persistently requested a more permanent repair for his condition, appealed the denials of care and timely filed this this lawsuit.  Defendants have ignored his requests despite recommendations from at least three urologists and one of his primary care physicians that his diseased

**PLAINTIFF'S OPPOSITION TO DEFENDANTS ESTOCK, BALL, CHAIKEN, AND REGULES' MOTION TO DISMISS FIRST AMENDED COMPLAINT**

kidney be repaired or removed.  Defendant Estock herself warned Mr. Holmes in 2014 that removal of his nephrostomy tube could lead to loss of kidney function, loss of the kidney itself, or even death.  The reason for this warning is that improper drainage of the kidney will lead to recurrent infections which could cause these catastrophic medical outcomes.  Mr. Holmes has been without a nephrostomy tube or stent for more than four years now.  The catastrophic outcomes warned about by Defendant Estock have not yet occurred but they are inevitable given Mr. Holmes' Stage 4 hydronephrosis and damaged ureter.  Both of Plaintiff's PCP physicians, Defendants Estock and Currier reviewed Plaintiff's medical records, personally treated him, and were personally aware of his complaints and grievances.   Each of them had the power to order the placement of a nephrostomy tube or them surgical intervention but did not.  Each of them also had the power to request that he be transferred to a facility for medical treatment but did not.  Currier discontinued his pain medications.  Mr. Holmes, who continues to live in pain from constant infections has sufficiently pleaded a violation of his constitutional rights under the Eighth Amendment for the Defendants named in the complaint.

**C.     Plaintiff Has Sufficiently Pled a Claim for Relief Against Defendants Kernan, Brown, Montgomery and Nasir Violation of 42 U.S.C. § 1983 for Deliberate Indifference to Serious Medical Needs.**

In the SAC, Plaintiff specifically pled unconstitutional policy violations sufficient to support *Monell* liability against the non-treating, supervisory Defendants Kernan, Brown, Montgomery and Nasir.  In particular, Plaintiff alleged that the failure to provide him necessary medical care was not based on a medical reason, but rather economic and/or other constitutionally impermissible reasons unrelated to the provision of medical services. (SAC ¶ 59)  In other words, Plaintiff did not receive adequate and appropriate treatment for his kidney because it was

**PLAINTIFF'S OPPOSITION TO DEFENDANTS ESTOCK, BALL, CHAIKEN, AND REGULES' MOTION TO DISMISS FIRST AMENDED COMPLAINT**

expensive and the CDCR implemented, condoned and ratified policies designed to save money by denying inmates necessary medical care.  Additionally, these Defendants acted with deliberate indifference in hiring/retaining, training, and supervising employees such that they violated Plaintiff's constitutional rights. (SAC ¶ 60)  The treating Defendants, Estock and Currier, were well aware of Plaintiff's grave physical condition and constant pain but failed to appropriately treat his condition.  Plaintiff's allegations support the reasonable inference that these treating physicians were improperly trained and improperly retained as staff when their deficiencies became apparent.  Defendant NASIR in particular, who was in charge of supervising the provision of medical care at CAL-CSP allowed improperly trained staff to ignore serious medical needs and did not supervise the provision of the care appropriately.

The United States Supreme Court in *Monell v. Department of Social Services*, 436 U.S. 658 (1978), held that "[l]ocal governing bodies ... can be sued directly under §b1983 for monetary, declaratory, or injunctive relief where the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers."  *Id*. at 690. It is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983. Id. at 694.  Plaintiff must plead non-conclusive factual allegations showing that: (1) that Plaintiff was deprived of his constitutional rights by Defendants Kernan, Brown, Montgomery and Nasir and their employees acting under the color of state law; (2) that Defendants Kernan, Brown, Montgomery and Nasir had customs or policies; (3) that the customs or policies amount to deliberate indifference to his constitutional rights; and (4) that these customs were the moving force behind the constitutional violations.  *Lee v. County*

**PLAINTIFF'S OPPOSITION TO DEFENDANTS ESTOCK, BALL, CHAIKEN, AND REGULES' MOTION TO DISMISS FIRST AMENDED COMPLAINT**

*of Los Angeles*, 250 F.3d 668, 681 (9th Cir. 2001) (citing *Oviatt v. Pearce*, 954 F.2d 1470, 1477 (9th Cir. 1992) and C*ity of Canton, Ohio v. Harris*, 489 U.S. 378, 389-391 (1989).  In *Clouthier v. Contra Costa County*, 591 f.3d 1232, 1249-1250 (9th Cir. 2010), the Ninth Circuit reiterated the three ways of establishing entity liability under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), and *City of Canton v. Harris*, 849 U.S. 378 (1989): (1) affirmative policies and practices; (2) failure to train or institute policies where the need for such training and policies is so obvious as to constitute deliberate indifference; and (3) commission or ratification of the tort by an official with final policy-making authority.  Under the second path to *Monell* liability a plaintiff can demonstrate a municipalities' deliberate indifference led to an omission and that the "omission caused the employee to commit the constitutional violation."  *Gibson v. County of Washoe*, Nev., 290 F.3d 1175, 1186 (9th Cir. 2002) (citing *City of Canton v. Harris*, 489 U.S. 378, 387 (1989).

"The Eleventh Amendment bars actions for damages against state officials who are sued in their official capacities in federal court." *Dittman v. California*, 191 F.3d 1020, 1026 (9th Cir. 1999). To the extent Plaintiff is suing Defendants Kernan, Brown, Montgomery, Nasir, and Currier, in their official capacities for injunctive relief, Plaintiffs' claims are viable. *Id*.  Because a suit against an official in his official capacity is a suit against the state, a policy or procedure of the state must be at issue in a claim for official capacity injunctive relief. *Haber v. Melo*, 502 U.S. 21, 25 (1991).

An individual may be liable under § 1983 for "causing" a person "to be subjected to a constitutional deprivation." *Chew v. Gates*, 27 F.3d 1432, 1446 (9th Cir. 1994). In the case of a supervisor, liability may be established by "either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient

**PLAINTIFF'S OPPOSITION TO DEFENDANTS ESTOCK, BALL, CHAIKEN, AND REGULES' MOTION TO DISMISS FIRST AMENDED COMPLAINT**

causal connection between the supervisor's wrongful conduct and the constitutional violation." *Redman v. County of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991).

It is well established that a municipality can be held liable for its deliberate indifference to the serious medical needs of inmates where its policies and practices which led to omissions and failures in necessary treatment.  In *Gibson v. County of Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002), the court held that a jury could hold the county liable for a policy which delayed medical care for inmates who were combative and uncooperative, which resulted in the death of mentally ill patient who was denied medical care.  See also *Cabrales v. County of Los Angeles*, 864 F.2d 1454, 1460-61 (9th Cir. 1988) (holding County of Los Angeles's practice of medical understaffing at the jail contributed to mentally ill detainee's lack of treatment and subsequent suicide, giving rise to liability); *Ramirez v. Ferguson*, 2011 WL 1157997 (W.D. Ark. Mar. 29, 2011) (finding that correctional officer defendants were liable for a "woeful" failure to train on the handling of inmates with mental health needs). In addition to being responsible for acts and commissions of its own employees, a municipality may also be held liable for its contracted medical care providers policies that result in deliberate indifference. See *Streit v. County of Los Angeles*, 236 F.3d 552, 555-56 (9th Cir. 2001) (county and sheriff's department liable under *Monell* for policies relating to detainees); *Hagan v. California Forensic Medical Group*, No. CIV. S-07-1095 LKK/DAD, 2009 WL 728465, at *7 (E.D. Cal. Mar. 5, 2009) (rejecting county's argument that it was not liable for constitutional violations by contracted medical provider's employees and policies); *George v. Sonoma County Sheriff's Department*, Civ. No. 08-2675-EDL, 2011 WL 2975850, at *7-8 (N.D. Cal. July 22, 2011) (holding that the medical center's absence of policies and training on discharge procedures for inmates was obviously deficient and deliberately indifferent) Where policies relating to medical treatment are at issue in a case, a "county's policy of hiring trained medical

**PLAINTIFF'S OPPOSITION TO DEFENDANTS ESTOCK, BALL, CHAIKEN, AND REGULES' MOTION TO DISMISS FIRST AMENDED COMPLAINT**

professionals does not insulate it from municipal liability." *Long v. County of Los Angeles*, 442 F.3d 1178, 1182-83, 1188-89 (9th Cir.2006) (finding questions of fact as to whether the "[c]ounty failed adequately to train jail medical staff to document patients' conditions and to monitor and assess the need for patients to be transferred to a facility with a higher level of medical care").

In this case, Plaintiff has presented sufficient factual allegation supporting his claims that the delay and denial of adequate medical treatment by the Defendants violated clearly established constitutional and statutory standards, and in addition, that the constitutional tort in this case was "the result of [] longstanding practice[s] or custom[s] which constitute the standard operating procedure of the local government entity." *Price v. Sery*, 513.F.3d 962, 966 (9th Cir. 2008). Plaintiff's factual allegations also support a showing that the constitutional tort in this case was the result of obviously inadequate policies with regard to basic urological care. Specifically, as set forth above, Plaintiff alleged that liability as to Defendants Kernan, Brown, Montgomery and Nasir. Plaintiff adequately alleged that the failure to provide him necessary medical care was based on economic and/or other constitutionally impermissible reasons unrelated to the provision of medical services, i.e., he was denied necessary care because it would be too expensive to provide it to him. Additionally, these supervisory Defendants acted with deliberate indifference in hiring, retaining, training, and supervising employees who violated Plaintiff's constitutional rights by denying him necessary care.

Requiring more specific evidence of these policies at the pleading stage would place Plaintiff in a Catch-22/Cart Before the Horse situation of having to describe policies and practices in detail before having the opportunity to engage in any sort of discovery. For these reasons, Defendants' motion should be denied.

**PLAINTIFF'S OPPOSITION TO DEFENDANTS ESTOCK, BALL, CHAIKEN, AND REGULES' MOTION TO DISMISS FIRST AMENDED COMPLAINT**

## V.  CONCLUSION

Plaintiff respectfully requests that Defendants' Motion to Dismiss be denied. If the Court should grant Defendants' motion in any part, Plaintiff respectfully requests leave to amend his Second Amended Complaint pursuant to Federal Rule of Civil Procedure 15 which expressly states that leave to amend "shall be freely given when justice so requires."  Fed.R.Civ. Proc. 15(a); see also *Allen v. City of Beverly Hills*, 911 F. 2d 367; 373 (9th Cir. 1990); *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

DATED: August 13, 2018          LAW OFFICES OF BRIAN A. VOGEL, PC


By:      /s/ Brian A. Vogel
                Brian A. Vogel, Esq.
                Attorneys for Plaintiff,
                CHARLES HOLMES (AL-0671)

**PLAINTIFF'S OPPOSITION TO DEFENDANTS ESTOCK, BALL, CHAIKEN, AND REGULES' MOTION TO DISMISS FIRST AMENDED COMPLAINT**

# CERTIFICATE OF SERVICE

Case Name:  **Holmes v. Estock**          Case No.: **3:16-cv-02458-MMA-BLM**

I hereby certify that on August 13, 2018, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**PLAINTIFF'S OPPOSITION TO DEFENDANTS ESTOCK, KERNAN, BROWN, MONTGOMERY, NASIR, AND CURRIER'S MOTION TO DISMISS SECOND AMENDED COMPLAINT**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury, under the laws of the State of California, that the foregoing is true and correct and that this declaration was executed August 13, 2018 at Ventura, California.

BRIAN A. VOGEL                    */s/ Brian A. Vogel*

Declarant                              Signature

**PLAINTIFF'S OPPOSITION TO DEFENDANTS ESTOCK, BALL, CHAIKEN, AND REGULES' MOTION TO DISMISS FIRST AMENDED COMPLAINT**