**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CHARLES HOLMES,<br><br>　　　　　　　　　　Plaintiff,<br><br>v.<br><br>ESTOCK, et al.,<br><br>　　　　　　　　　　Defendants. | Case No.: 3:16-cv-02458-MMA-BLM<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT**<br><br>[Doc. No. 60] |

　　　　Plaintiff Charles Holmes, a California inmate, brings this civil rights action pursuant to 42 U.S.C. § 1983 alleging violations of his Eighth Amendment right to adequate medical care. Plaintiff, proceeding through counsel, filed a Second Amended Complaint ("SAC") against various medical personnel, correctional officials, and California Governor Edmund G. Brown. *See* Doc. No. 55. Defendants move to dismiss Plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(6). *See* Doc. No. 60. Plaintiff filed an opposition to the motion, to which Defendants replied. *See* Doc. Nos. 65, 67. For the reasons set forth below, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion.

## BACKGROUND[1]

Plaintiff has a congenital defect in his left kidney, which requires ongoing medical treatment. In February 2012, Plaintiff began to experience flank pain and recurrent urinary tract infections, and was subsequently referred for consultation and treatment to two urology specialists. From 2012 to July 2014, while housed at Calipatria State Prison ("CSP-CAL"), Plaintiff was treated by urologists who recommended further surgery at University of California San Diego's Medical Center ("UCSD") to treat his kidney, which was not draining properly. A urologist inserted a nephrostomy tube into Plaintiff's left kidney to help with drainage on October 31, 2013, and then replaced the nephrostomy tube on May 9, 2014. That same day, Plaintiff's primary care physician at CSP-CAL, Defendant Estock, warned Plaintiff of the substantial risks associated with the removal of his nephrostomy tube. Plaintiff's treating urologist recommended the nephrostomy tube not be removed until Plaintiff was further evaluated to decide on definitive surgery to correct an obstruction in his ureter. However, in July 2014, before Plaintiff could be further evaluated, the area around the nephrostomy tube became infected. The nephrostomy tube was removed on July 14, 2014. The following day, Plaintiff was transferred to California State Prison, Sacramento ("CSP-SAC").

According to Plaintiff, Defendant Estock "allowed Plaintiff to be transferred to CSP-SAC and failed to arrange the recommended treatment." SAC ¶ 32. Plaintiff was not seen by the doctor for 14 days upon his arrival, and developed a kidney infection. Two months later, Plaintiff was treated by a urologist at University of California San Francisco Medical Center ("UCSF"), but the treatment proved ineffective. Plaintiff's primary care physician noted on November 19, 2014, "patient has complied with UCSF urology treatment recommendations. Zero help. No response to UCSF treatment

---

[1] Because this matter is before the Court on a motion to dismiss, the Court must accept Plaintiff's allegations as true. *See Hosp. Bldg. Co. v. Trs. Of Rex Hosp.*, 425 U.S. 738, 740 (1976).

suggestion and strongly recommend transfer to California State Prison near USCD! ASAP!" *Id.* ¶ 35.

Plaintiff submitted his first inmate health care appeal on July 1, 2014, indicating significant pain in both of his kidneys, and requesting a second opinion from a urologist. Plaintiff was interviewed by Defendant Estock via telephone regarding the appeal; the appeal was ultimately denied. Plaintiff filed a second inmate health care appeal on January 16, 2015, indicating that his urine was backing up to his kidney from his bladder and he was experiencing significant pain. Plaintiff's second appeal was ultimately denied on October 26, 2015.

Plaintiff was transferred back to CSP-CAL in July 2016. Plaintiff has suffered recurring urinary tract infections, with only temporary relief from recommended antibiotics and self-catheterization. Plaintiff's current primary care physician at CSP-CAL, Defendant Currier, has stopped administering pain medications to Plaintiff. In sum, Plaintiff alleges that "[s]ince July 15, 2014, [he] has not received the medical care necessary to avert permanent damage to his kidney(s)." *Id.* ¶ 7.

Based on these allegations, Plaintiff alleges violations of his Eighth Amendment right to adequate medical care. Plaintiff sues Defendants Estock and Currier in their individual capacities, alleging that they were deliberately indifferent to his serious medical needs.[2] Plaintiff sues Defendant Estock, Governor Brown, and prison officials Diaz[3], Montgomery, and Nasir, in their official capacities, alleging that they are responsible for maintaining "policies, customs, and practices which were the moving

---

[2] *See* SAC at 1 ("DR. ESTOCK, in her official and *individual* capacities" and "DR. THERESA CURRIER, an official, as custodial primary care physician for Plaintiff, in her *individual* capacity") (emphasis added).

[3] The Court *sua sponte* **SUBSTITUTES** Ralph Diaz, Acting Secretary of the California Department of Corrections and Rehabilitation ("CDCR") in place of Scott Kernan, who retired from the position effective August 31, 2018. Plaintiff sued Kernan in his official capacity, and as such, "replacement of the named official . . . result[s] in automatic substitution of the official's successor in office." *Kentucky v. Graham*, 473 U.S. 159, 166 n. 11; *see also* Fed. R. Civ. P. 25(d).

force of the constitutional deprivations Plaintiff has suffered." *Id*. ¶¶ 14-17. Plaintiff further alleges that some of the defendants are "empowered to transfer Mr. Holmes to any facility due to his medical condition," so that he may receive medically necessary treatment for his kidney disease. *Id.* ¶¶ 47, 49. To this end, Plaintiff seeks prospective injunctive relief, in addition to damages.

## LEGAL STANDARD

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint. *See Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, plaintiffs must also plead "enough facts to state a claim to relief that is plausible on its face." Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plausibility standard thus demands more than a formulaic recitation of the elements of a cause of action, or naked assertions devoid of further factual enhancement. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Instead, the complaint "must contain allegations of underlying facts sufficient to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

In reviewing a motion to dismiss under Rule 12(b)(6), courts must assume the truth of all factual allegations and must construe them in the light most favorable to the nonmoving party. *See Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). The court need not take legal conclusions as true merely because they are cast in the form of factual allegations. *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987). Similarly, "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).

In determining the propriety of a Rule 12(b)(6) dismissal, courts generally may not look beyond the complaint for additional facts. *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). "A court may, however, consider certain materials—documents

attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *Id.*; *see also Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir 2001). "However, [courts] are not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint." *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295–96 (9th Cir. 1998). Where dismissal is appropriate, a court should grant leave to amend unless the plaintiff could not possibly cure the defects in the pleading. *See Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009).

## DISCUSSION

### 1. Individual Capacity Claims Against Defendants Estock and Currier

Plaintiff alleges that Defendants Estock and Currier acted with deliberate indifference to his serious medical needs by failing to adequately treat his kidney disease while under their primary care.

A determination of deliberate indifference involves a two-step analysis consisting of both objective and subjective inquiries. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "First, the plaintiff must demonstrate a serious medical need such that failure to provide treatment could result in further significant injury or unnecessary and wanton infliction of pain. Second, the plaintiff must show that the defendant's response to the medical need was deliberately indifferent." *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992) (citations and internal quotations omitted). "In order to show deliberate indifference, an inmate must allege sufficient facts to indicate that prison officials acted with a culpable state of mind." *Wilson v. Seiter*, 501 U.S. 294, 302 (1991).

At the first step, Plaintiff adequately alleges the existence of an objectively serious medical need. Plaintiff has a congenital kidney disease that has resulted in improper function and recurring bladder infections.

At the second step, Plaintiff has alleged sufficient facts to demonstrate that Defendants Estock and Currier acted with the requisite subjective intent. According to

Plaintiff, while under the primary care of each physician, he has never "received the medical care necessary to avert permanent damage to his kidney(s)," despite both Defendants Estock and Currier being aware of the substantial risk of harm to Plaintiff. SAC ¶ 7.  For example, Defendant Estock warned Plaintiff of "the damage that he would do to the kidney if he removed the nephrostomy tube including, but not limited to, infection, loss of kidney function or kidney itself and/or death," but then failed twice to provide or arrange "for appropriate and clearly medically necessary care, i.e. replacement of the nephrostomy tube at a minimum." *Id*. ¶¶ 29, 33.  Plaintiff alleges that Defendant Currier has refused to continue administering pain medications despite Plaintiff's "persistent and painful urinary tract infections." *Id*. ¶ 7.  A failure to alleviate Plaintiff's pain with medication likely would have resulted in "unnecessary and wanton infliction of pain." *See McGuckin*, 974 F.2d at 1059.  Plaintiff further claims that Defendant Currier has treated his condition with antibiotics, despite possessing "all of Plaintiff's medical records," and therefore being aware of the need for surgical intervention in order to avoid permanent damage to Plaintiff's kidney and potential renal failure.  SAC ¶ 18.

In sum, taking Plaintiff's allegations as true, he has alleged plausible violations by Defendant Estock and Currier of his Eighth Amendment right to adequate medical care.

### 2. *Official Capacity Claims Against Defendants Estock, Diaz, Brown, Montgomery, and Nasir*

Plaintiff alleges Defendants Estock, Diaz, Brown, Montgomery, and Nasir are liable in their official capacities under the Eighth Amendment because "Plaintiff did not receive adequate and appropriate treatment for his kidney because it was too expensive and the CDCR implemented, condoned, and ratified policies designed to save money by denying inmates necessary medical care."  SAC ¶¶ 21-22.

As an initial matter, Plaintiff relies on *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), to support his theory of liability against these defendants.  *See* Doc. No. 65 at 16.  However, Plaintiff brings his claims against them in their official capacities, i.e. as agents of the state.  The Supreme Court has held that *Monell* liability does not extend to the

states. *See Quern v. Jordan*, 440 U.S. 33, 338 (1979). Instead, liability is "limited to local government units which are not considered part of the State for Eleventh Amendment purposes." *Id*. Accordingly, *Monell* is inapplicable, and Plaintiff cannot maintain a suit for damages against these defendants in their official capacities. *See Arizonans for Official English v. Arizona*, 520 U.S. 43, 69 n.24 (1997) ("State officers in their official capacities, like States themselves, are not amenable to suit for damages under § 1983.").

While the Eleventh Amendment bars a prisoner's section 1983 damages claims against state actors sued in their official capacities, *Will v. Michigan*, 491 U.S. 58, 66 (1989), it does not bar actions against state officials seeking prospective injunctive relief. *See Quern*, 440 U.S. at 337 ("[A] federal court, consistent with the Eleventh Amendment, may enjoin state officials to conform their future conduct to the requirements of federal law."); *see also Flint v. Dennison*, 488 F.3d. 816, 825 (9th Cir. 2007) ("[A] suit for prospective injunctive relief provides a narrow, but well-established, exception to Eleventh Amendment immunity."). In this case, Plaintiff seeks "an injunction compelling Defendants to comply with the Eighth Amendment and provide Plaintiff with appropriate medical care for his ongoing kidney problem." SAC at 16. Plaintiff alleges that applicable regulations, "in conjunction with the official powers vested by California law . . . empower these defendants to comply with any order for injunctive relief which this court deems appropriate." *Id*. ¶ 50.

"A plaintiff seeking injunctive relief against the State is not required to allege a named official's personal involvement in the acts or omissions constituting the alleged constitutional violation. Rather, a plaintiff need only identify the law or policy challenged as a constitutional violation and name the official within the entity who can appropriately respond to injunctive relief." *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1127 (9th Cir. 2013) (internal citations omitted). However, the official "must have some connection with the enforcement of the act," and that connection "must be fairly direct; a generalized duty to enforce state law or general supervisory power over

7

the persons responsible for enforcing the challenged provision will not subject an official to suit." *Ex parte Young*, 209 U.S. 123, 157 (1908).

It is well-established that Governor Brown, sued in his official capacity, has no alleged factual connection to the enforcement of CDCR regulations or the administration of the prison healthcare system, other than a general duty to enforce California law as the governor. *See L.A. Cnty. Bar Ass'n v. Eu*, 979 F.2d 697, 704 (9th Cir. 1992); *see also Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 943 (9th Cir. 2013) (holding that Governor Brown is entitled to Eleventh Amendment immunity where his only connection to challenged California statute is a general duty to enforce California law). As such, the Court dismisses Plaintiff's Eighth Amendment claim against Governor Brown.

Plaintiff's allegations are currently insufficient to demonstrate that Defendant Estock, a primary care physician at CSP-CAL, has the authority to effectuate or implement the desired changes to his medical care. For example, Plaintiff alleges that he has been under the primary care of Defendant Currier since his transfer back to CSP-CAL. Plaintiff alleges no facts to suggest that Defendant Estock is currently treating him, or otherwise involved with his medical care. Defendant Diaz, Acting Secretary of CDCR,[4] Defendant Nasir, the Healthcare CEO at CSP-CAL, and Defendant Montgomery, the Warden of CSP-CAL, are sufficiently connected to the implementation and enforcement of CDCR healthcare policies and regulations, such that they could respond to a court order granting Plaintiff prospective injunctive relief. However, Plaintiff fails to allege with sufficient specificity which policy or regulation violates his

---

[4] In February 2006, "all of the powers of the Secretary of the CDCR with respect to the delivery of medical care" were suspended and conferred upon a court-appointed Receiver. *Plata v. Schwarzenegger*, 603 F.3d 1088, 1092 (9th Cir. 2010). In September 2012, the district court presiding over the *Plata* class action ordered the implementation of a transition plan, to begin the process of returning responsibility for inmate healthcare to the Secretary of CDCR. Since that time, the Receiver has delegated responsibility back to the Secretary of the CDCR for certain institutions, including CSP-CAL.

Eighth Amendment right to adequate medical care. Plaintiff only generally avers that his "medical care providers breached their duties and violated numerous CDCR policies governing the provision of necessary medical care in failing to treat Plaintiff's condition." SAC ¶ 61. Amongst his allegations, Plaintiff specifically references only Title 15, Section 3379 of the California Code of Regulations, which regulates the transfer of inmates between facilities. Plaintiff does not allege that Defendants Diaz, Nasir, or Montgomery violated any particular policy or regulation related to the provision of medical services, much less the manner in which a specific individual's non-compliance resulted in a violation of Plaintiff's constitutional rights.

In sum, Plaintiff fails to allege plausible claims against any defendant in his or her official capacity. Plaintiff requests leave to amend his deficient claims pursuant to the liberal standard set forth in Federal Rule of Civil Procedure 15. *See* Doc. No. 65 at 26; Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."). However, the deadline for amending pleadings has expired. *See* Doc. Nos. 28 at 6; 42 at 2 n.3. As such, Plaintiff "must satisfy the 'good cause' standard of Federal Rule of Civil Procedure 16(b)(4), which provides that '[a] schedule may be modified only for good cause and with the judge's consent.'" *In re W. States Wholesale Natural Gas Antitrust Litig.*, 715 F.3d 716, 737 (9th Cir. 2013). Upon due consideration, the Court finds good cause to grant Plaintiff an opportunity to amend his official capacity claims against Defendants Estock, Diaz, Nasir, and Montgomery.

## CONCLUSION

Based on the foregoing, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion to dismiss as follows:

1. The Court **DENIES** Defendants' motion to dismiss Plaintiff's Eighth Amendment claims against Defendants Estock and Currier in their individual capacities.
2. The Court **GRANTS** Defendants' motion and **DISMISSES** Plaintiff's Eighth Amendment claim against Governor Brown **with prejudice**.

3. The Court **GRANTS** Defendants' motion and **DISMISSES** Plaintiff's Eighth Amendment claims against Defendants Estock, Diaz, Nasir, and Montgomery in their official capacities **without prejudice**.

4. The Court **GRANTS** Plaintiff leave to amend his official capacity claims against Defendants Estock, Diaz, Nasir, and Montgomery. If he chooses to amend his official capacity claims against these three defendants, Plaintiff must file a Third Amended Complaint on or before **December 10, 2018**. Plaintiff may not add any new claims or parties. Defendants not named and any claim not re-alleged in a Third Amended Complaint will be considered waived. *See* SD Cal CivLR 15.1; *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original."); *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "considered waived.").

**IT IS SO ORDERED**.

DATE: November 8, 2018

HON. MICHAEL M. ANELLO
United States District Judge

10

3:16-cv-02458-MMA-BLM